No. 87,357
No. 87,358
No. 87,359
No. 87,360
No. 87,361

STATE OF KANSAS, *Appellee*, v. STEVEN W. WIEGAND II, *Appellant*.

69 P.3d 627

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 18, 2002.

Opinion filed May 30, 2003.

*Sarah Ellen Johnson*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Amanda L. Norris*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This matter is before us for review of a Court of Appeals' decision remanding this case with directions to the trial court to consider placement of Steven Wiegand II in a Community Intermediate Sanction Center (CISC). *State v. Wiegand*, No. 87,357, unpublished opinion filed October 18, 2002.

Wiegand appealed the imposition of a prison sanction after his probation was revoked in several cases and he failed to successfully complete the Labette Correctional Conservation Camp (Labette). Wiegand argued the trial court erred in failing to consider placement in a CISC pursuant to K.S.A. 2002 Supp. 21-4603d(g). Wiegand also argued that the trial court had abused its discretion by refusing to hold a meaningful probation revocation hearing on April 30, 2001.

The Court of Appeals affirmed the trial court as to the issue of whether the trial court erred in not allowing a meaningful hearing, but reversed and remanded on the second issue with directions that the trial court consider placing Wiegand in a CISC. This court granted the State's petition for review of the CISC issue, but denied Wiegand's cross-petition for review of the meaningful hearing issue decided against him by the Court of Appeals.

We reverse the Court of Appeals and affirm the trial court's decision.

In 1997, Wiegand was sentenced in four cases. The controlling conviction in each case was burglary, a level 9 felony (K.S.A. 21-3715). Under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, the sentence range in each case fell within a grid box where the presumption of a nonprison sanction applied.

While on probation, Wiegand was convicted of criminal threat, a level 9 felony (K.S.A. 2002 Supp. 21-3419[a][1]). Again, a presumption of a nonprison sanction applied. On March 10, 2000, the trial court placed Wiegand on 24 months of intensive probation supervised by community corrections. Based upon his new conviction and failure to pay costs owed in the other cases, the State filed a motion to revoke Wiegand's probation in the four 1997 cases. After a hearing, the court ordered that Wiegand's probation be extended for 24 months based upon his new conviction.

In November 2000, Wiegand's probation officer alleged Wiegand had committed 23 probation violations since being placed with community corrections in March 2000. At a hearing on November 30, 2000, Wiegand stipulated he had violated his probation. Wiegand requested he be sent to the Labette Correctional Conservation Camp where he had been accepted preliminarily. The court accepted the stipulation and deferred disposition of the matter until clearance was received from Labette. The court stated it would reexamine Wiegand's status "once he gets out of Labette."

Wiegand was discharged from Labette for numerous violations of rules. At a hearing conducted on April 30, 2001, the trial court noted Wiegand's previous stipulation to a violation of his probation and his failure to complete Labette. The trial court summarily revoked Wiegand's probation and ordered him to serve the original sentences imposed. No mention was made by the trial court or any party of the possibility of a placement in a CISC.

Thus, the issue before this court is whether the Court of Appeals erred in ruling that K.S.A. 2002 Supp. 21-4603d(g) required the trial court to consider placing Wiegand in a CISC before revoking his probation and sending him to prison. This issue turns upon the interpretation of K.S.A. 2002 Supp. 21-4603d(g); interpretation of a statute is a question of law over which this court's review is unlimited. *State v. Engles*, 270 Kan. 530, 532-33, 17 P.3d 355 (2001).

The relevant portion of K.S.A. 2002 Supp. 21-4603d(g) reads as follows:

"[P]rior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid or [a border box], the court shall consider placement of the defendant in the Labette correctional conservation camp, conservation camps established by the secretary of corrections pursuant to K.S.A. 75-52,127, and amendment thereto or a community intermediate sanction center. Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center."

Wiegand argued that this statute required the trial court to consider a CISC placement before revoking his probation. The Court

of Appeals ruled: "The second sentence of K.S.A. 2001 Supp. 21-4603d(g) makes it clear that the legislature expected the district judge to consider each of the possible alternative nonprison possibilities." *Wiegand*, slip op. at 5. The Court of Appeals then remanded for the district court to consider placement of Wiegand in a CISC. *Wiegand*, slip op. at 5.

In seeking this court's review of that holding, the State pointed out that another Court of Appeals panel decided this issue differently in *State v. Oster*, 30 Kan. App. 2d 1135, 55 P.3d 364, *rev. denied* 275 Kan. 967 (2002). In *Oster*, the Court of Appeals ruled that K.S.A. 2002 Supp. 21-4603d(g) requires the trial court to consider either Labette, another conservation camp, *or* a CISC, but not all three. By considering Labette, the trial court satisfied the language of the statute. The court also noted that it would have been impossible for the trial court to consider placement in a CISC "whose very existence and location is unknown." *Oster*, 30 Kan. App. 2d at 1137, 55 P.3d at 365.

The State asks this court to resolve the split. The State urges the *Oster* interpretation of the statute and also argues that it cannot be error for the trial court to fail to consider placement in a CISC when none exists.

In his supplemental brief, Wiegand urges us to affirm the Court of Appeals. He first argues that the State is procedurally barred from arguing the *Oster* interpretation since it did not make that argument to the Court of Appeals. Instead, the State conceded that the statute required the trial court to consider placement in a CISC.

This court has recognized several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal "where (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case; (2) questions are raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of a trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a

wrong reason for its decision. [Citations omitted.]" *State v. Mincey,* 265 Kan. 257, 267, 963 P.2d 403 (1998).

Here, at the time the State filed its appellate brief, the only precedent available to it was *State v. Miller,* 30 Kan. App. 2d 161, 41 P.3d 868 (2002), a case in which the Court of Appeals reached the same holding as in this case. *Oster* was decided months later, 1 week before the Court of Appeals panel in this case issued its decision.

The State's new reliance on *Oster* falls squarely within the exceptions listed in *Mincey* and, as a result, we will consider the statutory interpretation question and resolve the split between *Miller* and *Oster.*

### *Interpretation of K.S.A. 2002 Supp. 21-4603d(g)*

The interpretation in *Oster* is a reasonable application of the first sentence of K.S.A. 2002 Supp. 21-4603d(g), which provides:

"[P]rior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid or [a border box], the court shall consider placement of the defendant in the Labette correctional conservation camp, conservation camps established by the secretary of corrections pursuant to K.S.A. 75-52,127, and amendment thereto *or* a community intermediate sanction center." (Emphasis added.)

This provision imposes an obligation upon the court to consider nonprison alternatives.

Of particular importance to our inquiry is the use of the word "or," which ordinarily means that conditions stand on equal footing and compliance with any condition satisfies the requirement. See *Kiernan v. United States Railroad Retirement Board,* 698 F.2d 1067, 1072 (10th Cir. 1983). Thus, the use of the disjunctive "or" means that the trial court must consider, generally, placement in a nonprison alternative setting and, specifically, any one, but not all, of the options.

We disagree with the Court of Appeals' interpretation that the second sentence of the provision requires that the "or" be read as an "and." The second sentence states:

"Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction

center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center."

The second sentence expresses a legislative intent that a defendant not be sent to prison if any of the listed nonprison options is available. Further, it requires specific findings if a defendant is not sentenced to Labette, another conservation camp, or a CISC when there is space available and the defendant meets the placement criteria. However, it does not mean that a sentence is erroneous because the sentencing court failed to make specific findings regarding Labette, other conservation camps, *and* CISCs, as long as one option has been considered and specific findings have been made regarding all options where information has been presented that placement is available.

Reading the two sentences of K.S.A. 2002 Supp. 21-4603d(g) together, we hold that the sentencing court is required to consider a nonprison alternative, either Labette, another conservation camp, or a CISC. If evidence is presented that space is available and the defendant meets the placement criteria of one or more alternatives, the court must consider each option. If a nonprison sanction is not imposed and information is provided that such placement is available, the trial court must state on the record the reasons for not placing the defendant in any alternative for which information has been provided.

In reaching this holding we are mindful of its practical implications. The existence of Labette and its general placement criteria are matters about which the courts have general knowledge. In contrast, as discussed in the Court of Appeals decisions in this case and *Oster*, considerable judicial resources have been expended in efforts to try to prove the existence of a CISC. Relying upon K.S.A. 60-409(b)(4), which allows courts to take judicial notice without request by a party of "specific facts . . . which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy," we take judicial notice of the fact that the Department of Corrections has not established CISCs. On May 22, 2003, Roger Werholtz, Secretary of Corrections, issued

a "Notice Concerning Community Intermediate Sanction Centers" explaining that funding was provided for the program, but no proposals were approved and funding has since lapsed. The notice stated:

"A community intermediate sanction center was never opened pursuant to [K.S.A. 2000 Supp. 21-4603d] and there are no community intermediate sanction centers within the meaning of K.S.A. 2000 Supp. 21-4603d (nor any of its preceding versions) operating at this time in the State of Kansas. Therefore, there is neither space available nor placement criteria for community intermediate sanction centers for purposes of potential sentencing dispositions pursuant to K.S.A. 2000 Supp. 21-4603d." 22 Kan. Reg. 835 (2003).

Hence, the practical result of our holding is that prior to the revocation of a nonprison sanction of a defendant whose offense is classified in a presumptive nonprison grid block or a border box, the sentencing court shall consider placement at Labette. If, in the future, a CISC or other conservation camp is established, information must be presented to the court regarding the placement option.

In this case, the court considered Labette and ordered a placement in that program. After Wiegand failed to complete that program, the court imposed a prison sanction. Since there was no information regarding defendant's eligibility for placement at a CISC, the trial court did not err in failing to make the findings required by K.S.A. 2002 Supp. 21-4603d(g).

We reverse the Court of Appeals on the issue of consideration of placement at a CISC and affirm the trial court. In addition, we disapprove language in *State v. Miller*, 30 Kan. App. 2d 161, 41 P.3d 868 (2002), which is contrary to the holding of this case.

ABBOTT and GERNON, JJ., not participating.

LARSON, S.J., and ALLEN, S.J., assigned.