Nos. 98,430,
98,431

STATE OF KANSAS, *Appellee*, v. TABITHA L. BONNER, *Appellant*.

(227 P.3d 1)

Opinion filed March 5, 2010.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause, and *Carl Folsom, III*, of the same office, was on the brief for appellant.

*David Maslen*, assistant county attorney, argued the cause, and *Paul J. Morrison*, former attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal requires us to consider whether an error in failing to consider the alternative nonprison sanctions provided for in K.S.A. 2005 Supp. 21-4603d(g) and K.S.A. 2006 Supp. 21-4603d(g)—placement at Labette Correctional Conservation Camp (Labette), in another conservation camp, or in a community intermediate sanction center (CISC)—is a reversible error when none of those alternatives is available. We conclude the error is harmless and does not require us to vacate the sentence. This question arises because we hold the district court erred in concluding that the alternative nonprison sanctions did not have to be considered under 21-4603d(g) if the crime was committed while the defendant was on felony bond, even if another circumstance under the statute applies. In addition, following well-established precedent, we hold the district court did not err by including a Board of Indigents' Defense Services (BIDS) application fee in the journal entry of judgment even though it did not consider Bonner's ability to pay the fee during the sentencing hearing, and the district court did not err in considering Bonner's criminal history without submitting it to a jury for determination.

## FACTS

This is a consolidated appeal arising from sentences imposed in two cases. In both cases, Tabitha L. Bonner committed the crimes while on felony bond.

In one case (No. 05CR553I), Bonner pleaded no contest to two counts of forgery in violation of K.S.A. 2005 Supp. 21-3710, severity level 8 felonies. Because she had a criminal history score of E, her convictions fell in block 8-E on the nondrug sentencing guideline grid, which is a presumptive probation grid block. See K.S.A. 2005 Supp. 21-4704.

At sentencing, Bonner requested she be given probation under the supervision of community corrections. The district court denied this request and invoked the special sentencing rule in K.S.A. 2005 Supp. 21-4603d(f), which grants a district court the discretion to sentence a defendant to prison if the crime of conviction is a felony that was committed while the defendant was on felony bond. The district court imposed the standard sentence in the grid block and did not make any findings regarding alternative nonprison sanctions under K.S.A. 2005 Supp. 21-4603d(g). The district court also awarded court costs, restitution, and BIDS attorney fees in an amount to be determined by the BIDS fee schedule. In the journal entry, the district court awarded $460 for BIDS attorney fees and the $100 BIDS administrative fee.

In the second case (No. 08CR395I), Bonner pleaded no contest to attempted possession of cocaine in violation of K.S.A. 2006 Supp. 21-3301 and K.S.A. 2006 Supp. 65-4160, a severity level 4 felony. Even though this conviction was subsequent to the forgery convictions, Bonner's criminal history score remained an E. This placed Bonner in a presumptive probation grid block on the sentencing guidelines drug grid. See K.S.A. 2006 Supp. 21-4705.

The sentencing hearing in this case, which was held approximately 1 week after the sentencing hearing in the forgery case, went much the same as the prior hearing. Bonner again requested probation, and the district court again invoked 21-4603d(f), imposed the standard prison sentence in the 4-E grid block, and failed to consider the alternative nonprison sanctions provided for in 21-4603d(g). (K.S.A. 2005 Supp. 21-4603d applied to the forgery crimes, which were committed in 2005. The cocaine offense was committed in 2006, and K.S.A. 2006 Supp. 21-4603d applied. Although 21-4603d was amended in 2005, neither 21-4603d[f] or [g] were amended. L. 2005, ch. 150, sec. 5. In this opinion, we will

cite the 2005 supplement when referring to the forgery case and the 2006 supplement when referring to the attempted possession of cocaine case and when analyzing 21-4603d as it applied in both cases).

Further, at the sentencing hearing for the attempted possession of cocaine conviction, the district court awarded attorney fees in an amount to be determined by the BIDS fee schedule. In the journal entry, the district court awarded $525 for BIDS attorney fees and the $100 BIDS administrative fee.

On direct appeal, Bonner argued the district court was required to apply K.S.A. 2006 Supp. 21-4603d(g) and consider alternative nonprison sanctions—Labette, another qualifying conservation camp, or a CISC—before sentencing her to prison, because her convictions fell within presumptive probation grid blocks. Second, Bonner argued the district court erred when it failed during the sentencing hearing to consider her ability to pay the BIDS attorney fees and the BIDS administrative fee. Finally, Bonner argued the district court erred by not having a jury determine her criminal history. In *State v. Bonner*, No. 98,430, unpublished opinion filed August 1, 2008, the Court of Appeals affirmed in part and vacated in part.

With regard to the forgery convictions, the Court of Appeals recognized that 2005 Supp. K.S.A. 21-4603d(g) requires the district court to consider alternative nonprison sanctions before ordering a dispositional departure from a presumptive nonprison sentence. The Court of Appeals determined this provision was not applicable, however, because the forgeries were committed while Bonner was on felony bond and K.S.A. 2005 Supp. 21-4603d(f) gave the district court the discretion to impose imprisonment and provides "imposition of a prison sentence for the new crime does not constitute a departure."

Regarding Bonner's conviction for attempted possession of cocaine, the Court of Appeals observed that K.S.A. 2006 Supp. 21-4603d(g) requires the district court to consider alternative nonprison sanctions before imposing a prison sentence when the defendant's conviction is classified as 4-E on the drug grid and the defendant does not qualify for placement in a drug treatment pro-

gram under K.S.A. 2006 Supp. 21-4729. The court recognized grid block 4-E applied and that Bonner did not qualify for a drug treatment program because she had a prior felony conviction in Missouri for sale of a controlled substance. Nevertheless, the Court of Appeals determined alternative nonprison sanctions did not need to be considered because Bonner's crime of conviction took place while she was on felony bond. *Bonner*, slip op. at 2.

Regarding the BIDS attorney fees, the Court of Appeals observed that *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006), requires the district court to consider the defendant's financial resources and to evaluate the burden payment would impose before awarding such fees. See K.S.A. 2006 Supp. 22-4513(b). The State conceded that the district court failed to follow *Robinson* when awarding the BIDS attorney fees and that Bonner's cases had to be remanded. The Court of Appeals, therefore, vacated the BIDS attorney fee awards and remanded to the district court for a determination of Bonner's financial resources in light of *Robinson*. *Bonner*, slip op. at 5-6.

As for the BIDS administrative fee ordered in each journal entry of judgment, the Court of Appeals rejected the notion that the district court was required to apply the *Robinson* analysis at sentencing. The Court of Appeals pointed out that in *State v. Hawkins*, 285 Kan. 842, 176 P.3d 174 (2008), this court established that the district court assesses the application fee when a defendant applies for court-appointed counsel and that determining whether the fee would cause manifest hardship is "a minor extension of the analysis which the district court is already performing when assessing eligibility for court-appointed counsel." 285 Kan. at 853. The Court of Appeals stated that the district court made the required inquiry to assess the BIDS administrative fee in Bonner's cases. *Bonner*, slip op. at 6.

Finally, concerning Bonner's contention that the district court erred by imposing a sentence without first proving her prior convictions to a jury beyond a reasonable doubt, the Court of Appeals cited *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002), and *State v. Gonzalez*, 282 Kan. 73, 115-18, 145 P.3d 18 (2006), where

the same argument was rejected by this court. *Bonner*, slip op. at 7.

Bonner now petitions this court for review. Because the Court of Appeals ruled in her favor on the issue regarding the BIDS attorney fees, Bonner does not raise that issue in her petition for review. She raises all other issues, however, and we granted review under K.S.A. 22-3602(e).

## STANDARD OF REVIEW

The issues Bonner raises require us to interpret various sentencing statutes. Interpretation of a statute is a question of law, and the appellate court's standard of review is unlimited. *State v. Gonzales*, 289 Kan. 351, 365, 212 P.3d 215 (2009).

Our rules of statutory interpretation are well known. As we recently stated:

"When a court is called upon to interpret a statute, the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language it enacted. [Citation omitted.] For this reason, when the language of a statute is plain and unambiguous, courts need not resort to statutory construction. [Citation omitted.] If a statute is subject to more than one interpretation, however, a court attempting to discern legislative intent may employ rules of statutory construction and look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effects the statute may have under the various constructions suggested. [Citations omitted.]" *State v. Phillips*, 289 Kan. 28, 32, 210 P.3d 93 (2009).

See *State v. Ellmaker*, 289 Kan. 1132, 1154, 221 P.3d 1105 (2009).

As a general rule, this court strictly construes a criminal statute in favor of the accused, which simply means that the court reads words with their ordinary meaning. The court decides any reasonable doubt about a word's meaning in favor of the accused. *State v. Kleypas*, 282 Kan. 560, 564, 147 P.3d 1058 (2006). This rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible so as to give effect to the legislative design and intent. *State v. Bee*, 288 Kan. 733, 737, 207 P.3d 244 (2009).

## Consideration of Alternative Nonprison Sanctions

First, Bonner contends the district court erred in failing to consider alternative nonprison sanctions before imposing incarceration in each criminal case. She argues that K.S.A. 2006 Supp. 21-4603d(g) requires this placement consideration.

K.S.A. 2006 Supp. 21-4603d(g) identifies five circumstances in which the district court

*"shall consider placement* of the defendant in the Labette correctional conservation camp, conservation camps established by the secretary of corrections pursuant to K.S.A. 75-52,127, and amendment thereto or a community intermediate sanction center. Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center." (Emphasis added.)

Our courts have construed the statutory language "shall consider placement" to be mandatory. See, *e.g., State v. Wiegand*, 275 Kan. 841, 845-46, 69 P.3d 627 (2003); *State v. Williams*, 34 Kan. App. 2d 837, 838-39, 125 P.3d 578 (2006). The statute requires these alternative sentencing options to be considered in the following five circumstances:

1. "Prior to imposing a dispositional departure for a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid,"
2. "[P]rior to sentencing a defendant to incarceration whose offense is classified in grid blocks 5-H, 5-I or 6-G of the sentencing guidelines grid for nondrug crimes or in grid blocks 3-E, 3-F, 3-G, 3-H or 3-I of the sentencing guidelines grid for drug crimes,"
3. "[P]rior to sentencing a defendant to incarceration whose offense is classified in grid blocks 4-E or 4-F of the sentencing guideline grid for drug crimes and whose offense does not meet the requirements of [K.S.A. 21-4729], and amendments thereto,"
4. "[P]rior to revocation of a nonprison sanction of a defendant whose offense is classified in grid blocks 4-E or 4-F of the sentencing guideline grid for drug crimes and whose offense does not meet the requirements of [K.S.A. 21-4729], and amendments thereto, *or*"
5. "[P]rior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid or grid blocks 5-H, 5-I or 6-G of the sentencing guidelines grid for nondrug

crimes or in grid blocks 3-E, 3-F, 3-G, 3-H or 3-I of the sentencing guidelines grid for drug crimes . . . ." (Emphasis added.) K.S.A. 2006 Supp. 21-4603d(g).

This court recently determined that the word "or" in subsection (g) is to be read as a disjunctive term rather than a conjunctive term. *Bee*, 288 Kan. at 741. In other words, a district court must consider an alternative sentencing sanction if any of the five circumstances applies.

In this appeal, two of the circumstances potentially apply—the first and the fourth. Because 21-4603d applies differently in each of Bonner's criminal cases, we will discuss the forgery convictions separately from the attempted possession of cocaine conviction.

*Forgery Case*

The two counts of forgery in case No. 05CR553I were level 8 nondrug crimes. With a criminal history score of E, Bonner's conviction fell into a presumptive probation block on the sentencing guidelines nondrug grid. The plain language of K.S.A. 2005 Supp. 21-4603d(g) requires the district court to consider alternative nonprison sanctions before imposing a dispositional departure for a defendant whose conviction falls into a "nonprison grid block." Key to this provision's application is the requirement that a prison sentence must be a dispositional departure.

This was not so in Bonner's forgery case. Under the facts, prison was not a dispositional departure because the two counts of forgery were committed while Bonner was on felony bond. K.S.A. 2005 Supp. 21-4603d(f) provides:

"When a new felony is committed while the offender is on release for a felony pursuant to the provisions of article 28 of chapter 22 of the Kansas Statutes Annotated, a new sentence may be imposed pursuant to the consecutive sentencing requirements of K.S.A. 21-4608, and amendments thereto, and *the court may sentence the offender to imprisonment for the new conviction,* even when the new crime of conviction otherwise presumes a nonprison sentence. In this event, *imposition of a prison sentence for the new crime does not constitute a departure.*" (Emphasis added.)

This provision clearly gives the district court the discretion to impose prison when probation is presumed if an offender commits a new crime while on felony bond. And while the decision is dis-

cretionary, if the court chooses to impose a prison sentence for the new crime, the sentence "does not constitute a departure." This is exactly what occurred in Bonner's forgery case. Moreover, no other circumstance identified in K.S.A. 2005 Supp. 21-4603d(f) applies. Consequently, the absence of a dispositional departure means that the alternative nonprison sanction provision of K.S.A. 2005 Supp. 21-4603d(g) does not apply.

Thus, the district court did not err in failing to consider alternative nonprison sanctions in Bonner's forgery case, and we agree with the Court of Appeals' reasoning on this point.

*Attempted Possession of Cocaine Case*

The one count of attempted possession of cocaine in case No. 06CR395I was a severity level 4 drug crime. With Bonner's criminal history score of E, Bonner's conviction fell into a presumptive probation block on the sentencing guidelines drug grid. Because the crime was committed while Bonner was on felony bond, the district court had authority pursuant to K.S.A. 2006 Supp. 21-4603d(f) to order imprisonment without implementing a departure.

Nevertheless, a different circumstance identified in K.S.A. 2006 Supp. 21-4603d(g)—the fourth circumstance listed above—applies. Bonner's attempted possession of cocaine conviction was classified in the 4-E drug grid, and one of the circumstances listed in K.S.A. 2006 Supp. 21-4603d(g) requires consideration of alternative nonprison sanctions prior to sentencing for a defendant whose "offense is classified in grid blocks 4-E or 4-F . . . and whose offense does not meet the requirements of [K.S.A. 21-4729]." In turn, K.S.A. 2006 Supp. 21-4729(a)(1) requires placement in a certified drug treatment program if the "offense is classified in grid blocks 4-E, 4-F, 4-G, 4-H or 4-I of the sentencing guidelines grid for drug crimes" and the defendant "has no felony conviction of K.S.A. 65-4142, 65-4159, 65-4161, 65-4163 or 65-4164, and amendments thereto or any substantially similar offense from another jurisdiction." It is undisputed that Bonner had a prior felony conviction in Missouri for sale of a controlled substance, which is the statutory equivalent of 65-4161. Consequently, Bonner's of-

fense did not meet the requirements of K.S.A. 2006 Supp. 21-4729, and her offense was classified in grid block 4-E. As a result, the fourth circumstance listed in K.S.A. 2006 Supp. 21-4603d(g) applies.

The Court of Appeals recognized the applicability of this circumstance but concluded that because the sentence was not a dispositional departure, the alternative sentencing did not apply. In other words, the Court of Appeals failed to read the "or" in the statute as a disjunctive term and, therefore, erroneously held that alternative nonprison sanctions did not have to be considered by the district court if the first—the dispositional departure—circumstance did not apply.

This application of the statute is contrary to the clear language of the provision. See *Bee*, 288 Kan. at 741. The word "or" indicates the alternative nonprison sanctions must be considered if there is a dispositional departure or if the offense is classified in grid blocks 4-E or 4-F and does not meet the requirements of K.S.A. 2006 Supp. 21-4729. Under the latter circumstance, there is no mention of the special rule under K.S.A. 2006 Supp. 21-4603d(f) where a new felony is committed while the offender is on felony bond, and there is no requirement that the imposition of a prison sanction be a dispositional departure. Hence, we conclude the fourth circumstance listed in K.S.A. 2006 Supp. 21-4603d(g)—relating to drug treatment—requires consideration of alternative nonprison sanctions, notwithstanding the fact that the crime was committed while the offender was on felony bond.

This conclusion is bolstered by the fact that K.S.A. 2006 Supp. 21-4603d(f) does not *mandate* a prison sentence when a defendant commits a new crime while on felony bond; it merely gives the district court the discretion to impose a prison sentence. If incarceration were mandated, it would be inconsistent to conclude that the legislature intended the consideration of alternative nonprison sanctions. See *Bee*, 288 Kan. 733, Syl. ¶ 7 ("An offender sentenced pursuant to K.S.A. 21-4729 who fails to participate in a drug treatment program is subject to immediate imposition of the underlying prison sentence once the district court has made the finding required by K.S.A. 21-4603d[n] of a pattern of intentional conduct

demonstrating the offender's refusal to comply with or participate in treatment. Consideration of placement in [Labette] or other nonprison sanctions under K.S.A. 21-4603d[g] is not required.").

The Court of Appeals erred in applying the identical rationale to both the forgery case and the attempted possession of cocaine case. The district court should have considered alternative non-prison sanctions with respect to Bonner's conviction for attempted possession of cocaine.

*Disposition*

Nevertheless, this error does not necessarily require reversal. See *Wiegand,* 275 Kan. at 846-47.

In *Wiegand,* the district court considered a placement at a conservation camp but did not consider placement at a CISC. We held that consideration of both alternatives was required by the following sentence in K.S.A. 2002 Supp. 21-4603d(g):

"Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center."

Despite the error resulting from the district court's failure to consider both alternatives, we did not vacate the sentence because the error was of no practical consequence. In reaching this conclusion, we took judicial notice pursuant to K.S.A. 60-409(b)(4) of a Department of Corrections "Notice Concerning Community Intermediate Sanction Centers" that stated in part:

" 'A community intermediate sanction center was never opened pursuant to [K.S.A. 2000 Supp. 21-4603d] and there are no community intermediate sanction centers within the meaning of K.S.A. 2000 Supp. 21-4603d (nor any of its preceding versions) operating at this time in the State of Kansas. Therefore, there is neither space available nor placement criteria for community intermediate sanction centers for purposes of potential sentencing dispositions pursuant to K.S.A. 2000 Supp. 21-4603d.' 22 Kan. Reg. 835 (2003)." *Wiegand,* 275 Kan. at 847.

Although there was not a CISC in existence, we noted that placement at Labette was an available alternative. Consequently, we

held a "sentencing court shall consider placement at Labette. If, in the future, a CISC or other conservation camp is established, information must be presented to the court regarding the placement option." *Wiegand,* 275 Kan. at 847. As applied in that case, we concluded the district court's failure to consider the nonexistent CISC alternatives did not require us to vacate the sentence.

Applying *Wiegand* to this case, no CISC alternatives were presented at sentencing. Regardless, under *Wiegand* the district court was required to consider placement at Labette.

Circumstances have since changed, however. On June 25, 2009, the Department of Corrections issued a "Notice Concerning Cessation of Operations of Labette Correctional Conservation Camps and Suspension of Intensive Substance Abuse Treatment Programming in Kansas Department of Corrections Facilities." 28 Kan. Reg. 1026 (2009). The notice stated in part:

"In regard to the former subject of this Notice, due to lack of appropriated funding for its operation in Fiscal Year 2010, the Labette Community Correctional Conservation Camp for males (more commonly known as the 'Labette County male boot camp') shall cease to operate as of June 30, 2009. It shall not thenceforth be available in practice as a sentencing disposition for male offenders who are subject to possible placement therein by sentencing courts pursuant to K.S.A. 21-4603d(a)(5) or (g).

"This Notice will further serve to confirm that placement of offenders in the Labette Correctional Conservation Camp for females (more commonly known as the 'Labette County female boot camp') has already been effectively curtailed in Fiscal Year 2009 due to a budgetary rescission, and likewise, that said facility did not receive appropriate funding for operation in Fiscal Year 2010, and will therefore also not be available in practice as a sentencing disposition for female offenders.

. . . .

"This Notice is provided for the guidance of Kansas courts, prosecutors, members of the defense bar, and the public in regard to making appropriate alternative sentencing dispositions for those offenders subject to the provisions of K.S.A. 21-4603d(a) & (g), K.S.A. 2008 Supp. 21-4704(p), and 21-4705(f), as amended." 28 Kan. Reg. at 1026-27 (2009).

In light of this notice, before oral arguments in this case we issued an order the purpose of which was to "afford the parties reasonable opportunity to present information relevant to the propriety of taking" judicial notice that Labette had closed. K.S.A. 60-

412(d) (judicial notice in proceedings subsequent to trial); see K.S.A. 60-409. At oral argument, the parties agreed it was appropriate to take judicial notice of the Department of Corrections' announcement.

Hence, even though K.S.A. 2006 Supp. 21-4603d(g) imposes an obligation to consider Labette, implementation of a Labette placement is impossible. As a result, if we were to vacate the sentence and remand for a new sentencing, all the sentencing court could do is consider the fact that Labette is closed. Bonner's requested remedy has been rendered moot, and a remand would be futile. See *State v. Johnson*, 42 Kan. App. 2d 356, 359, 211 P.3d 861 (2009) (remand for consideration of Labette would be useless formality); *State v. Lewellyn*, No. 100,640, unpublished opinion filed September 18, 2009 (despite failure, under K.S.A. 21-4603d[g], to consider on the record Labette or any other conservation camp or community intermediate sanction center, "no purpose would be served by remanding the case" because "that option no longer exists"); *State v. Everett-Powell*, No. 100,254, unpublished opinion filed August 28, 2009 (same; dealing with female defendant).

Simply put, a failure to comply with 21-4603d(g) is not reversible error if none of the alternative nonprison sanctions listed in the statute is available. Consequently, we conclude the error in failing to consider placement at Labette does not require us to vacate the sentence in case No. 08CR395I or to remand for resentencing.

### BIDS APPLICATION FEE

Next, we consider Bonner's complaint that the journal entry of judgment in each case required her to pay the $100 BIDS application fee when the court had not orally announced the fee at the sentencing hearing or considered at sentencing the financial burden of the fee. Bonner acknowledges that she did not raise any objections regarding the BIDS application fee before the district court.

The application fee is provided for in K.S.A. 22-4529, which states in relevant part:

"Any defendant entitled to counsel pursuant to K.S.A. 22-4503, and amendments thereto shall pay an application fee in the amount of . . . $100 . . . to the

clerk of the district court. If it appears to the satisfaction of the court that payment of the application fee will impose manifest hardship on the defendant, the court may waive payment of all or part of the application fee."

This court has recently rejected similar claims pertaining to the BIDS application fee. As the Court of Appeals noted, in *Hawkins* this court established that the district court assesses the application fee when a defendant applies for court-appointed counsel and that determining whether the fee would cause manifest hardship is "a minor extension of the analysis which the district court is already performing when assessing eligibility for court-appointed counsel." *Hawkins*, 285 Kan. at 853. Then, in *State v. Scaife*, 286 Kan. 614, 625-26, 186 P.3d 755 (2008), this court held that because a defendant incurs the obligation to pay the BIDS application fee when the application is completed, an order in a journal entry of sentencing to pay an unpaid application fee—even if not pronounced from the bench—is not improper. See *State v. Andelt*, 289 Kan. 763, 775, 217 P.3d 976 (2009) (approving the application of the rationale in *Scaife*).

More recently, this court held that an order to pay an application fee is merely an imposition of costs and is neither punitive nor part of a sentence. Because the defendant's ability to pay the fee is considered at the time the defendant submits an application for appointed counsel, the district court is not required to make further findings at sentencing to validate the assessment of the application fee. *State v. Phillips*, 289 Kan. 28, Syl. ¶¶ 4, 8, 210 P.3d 93 (2009); see *Hawkins*, 285 Kan. 842, Syl. ¶ 7 (once application fee is initially assessed, if any part of the application fee remains unpaid at the time of sentencing, the district court may include any unpaid fee in its sentencing order without making any additional findings); see also *State v. Casady*, 289 Kan. 150, 157, 210 P.3d 113 (2009) (determining constitutional right to counsel was safeguarded because K.S.A. 22-4529 allows waiver of fee in cases of manifest hardship or if defendant is acquitted or case is dismissed).

In these cases, we reiterated that the district court should determine the propriety of imposing the application fee at the time of the initial determination to appoint counsel. Further, this de-

termination does not require any subsequent findings by the district court at sentencing. *E.g., Phillips,* 289 Kan. at 37-38.

Here, in neither case did Bonner ever raise the issue of her ability to pay before the district court, and there is nothing in the record indicating that the district court failed to comply with K.S.A. 22-4529 in assessing Bonner's BIDS application fee.

The Court of Appeals correctly affirmed the BIDS application fee.

### *APPRENDI* ISSUE

Finally, Bonner contends that her constitutional rights under *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), were violated because her criminal history was not proven to a jury beyond a reasonable doubt.

This court has repeatedly rejected this claim as controlled by *State v. Ivory,* 273 Kan. 44, 41 P.3d 781 (2002). See, *e.g., State v. Raschke,* 289 Kan. 911, 912, 219 P.3d 481 (2009); *Gonzales,* 289 Kan. at 372. Bonner's contention has no merit.

The decisions of the Court of Appeals and the district court are affirmed on all issues that are subject to our review, which did not include the Court of Appeals order vacating the imposition of BIDS attorney fees in both cases.