No. 102,786

DAVID A. DISSMEYER, LESTER L. LAWSON, and TERRY
MITCHELL, *Appellants*, v. STATE OF KANSAS, *Appellee*.

(249 P.3d 444)

Opin-
ion filed April 8, 2011.

*Rebecca S. Rice*, of Rice Law Office, of Lindsborg, argued the cause and was
on the brief for appellant.

*Patrick J. Hurley*, deputy attorney general, argued the cause, and *Tim J. Rie-
mann*, assistant attorney general, and *Steve Six*, attorney general, were on the
brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Plaintiffs David A. Dissmeyer, Lester L. Lawson, and
Terry L. Mitchell appeal from a district court order in a declaratory
judgment action seeking to restrain enforcement and to clarify
Kansas statutes regulating certain gaming machines.

During the 2007 legislative session, the Kansas Legislature
passed and the Governor signed S.B. 66, the Kansas Expanded
Lottery Act. The law authorized operation of certain gaming facil-

ities, electronic gaming machines, and other lottery games at certain designated locations. The Act became effective April 19, 2007. L. 2007, ch. 110. It is codified at K.S.A. 2010 Supp. 74-8733 *et seq*.

This court upheld the constitutionality of the Act as it related to ownership and operation of the lottery in *State ex rel. Six v. Kansas Lottery*, 286 Kan. 557, 186 P.3d 183 (2008). The present appeal challenges the portions of the Act defining "gray machines" and outlawing ownership of and public access to such machines.

On March 21, 2008, the executive director of the Kansas Lottery sent a letter to all lottery retailers warning them that the Kansas Expanded Lottery Act prohibited participating retailers from owning or operating gray machines. The letter stated that the Kansas Racing and Gaming Commission had received many calls from across the state regarding gray machines. The letter reminded recipients that the Commission could not give them legal advice and informed them that the Commission was "working with law enforcement officials to determine which machines are illegal."

The plaintiffs own or lease amusement game machines in Wyandotte County, Kansas. The pleadings do not reveal the precise nature of their machines. On October 16, 2008, they filed a declaratory judgment action seeking a determination that K.S.A. 2010 Supp. 74-8702 and K.S.A. 2010 Supp. 74-8761 are unconstitutional. They also sought injunctive relief barring enforcement of those statutes. The district court granted the State's motion for summary judgment and found that the statutes were not unconstitutionally vague and that injunctive relief was therefore not appropriate. This court assumed jurisdiction over the plaintiffs' appeal from that judgment under K.S.A. 2010 Supp. 60-2102(b)(2).

K.S.A. 2010 Supp. 74-8702(g) sets out the definition of gray machines. K.S.A. 2010 Supp. 74-8750(d) authorizes the executive director of the Kansas Lottery or the executive director of the Kansas Racing and Gaming Commission to confiscate any gray machine that does not comply with the requirements of the Expanded Lottery Act. K.S.A. 2010 Supp. 74-8761 makes it a severity level 9, nonperson felony to place in operation or to continue to have in place any gray machine for use by members of the public in any location in this state.

The plaintiffs challenge the constitutionality of this statutory scheme. The constitutionality of a statute is a question of law to which this court applies a de novo standard of review. *Tolen v. State*, 285 Kan. 672, 673, 176 P.3d 170 (2008).

The district court elected to incorporate the definition of "gambling device" from K.S.A. 21-4302(d). K.S.A. 21-4307 makes possession of a gambling device illegal. The district court concluded that incorporating the criminal code renders the Chapter 74 statutes sufficiently clear to pass constitutional muster.

K.S.A. 21-4302(d) defines gambling devices for purposes of the criminal code. It does not address gray machines, and the language that it employs in its definitions does not include linking devices to a lottery central computer system or simulating games played on authorized gaming machines. It also does not address the latent potential for turning a nongambling device into a gambling device. As a consequence, it does not clarify or limit the definition of gray machines contained in the Kansas Expanded Lottery Act.

The plaintiffs argue that there are only two ways of looking at the statutory provisions in question: Either the statute is plain and unambiguous on its face, and it therefore applies to such a broad array of devices that it can have no rational basis, or the statute is vague and ambiguous and, therefore, violates due process by failing to give parties notice that particular conduct is unlawful.

A statute that either requires or forbids the doing of an act in language that is so vague that persons of common intelligence must guess at its meaning and will differ as to its application violates the Fourteenth Amendment to the United States Constitution and is thus void for vagueness. *State v. Richardson*, 289 Kan. 118, 124, 209 P.3d 696 (2009). The statute at issue is not unconstitutionally vague, and it does not require incorporation of the definition of gambling devices contained in K.S.A. 21-4302(d).

K.S.A. 2010 Supp. 74-8702(g) defines gray machines as follows:

" 'Gray machine' means any mechanical, electro-mechanical or electronic device, capable of being used for gambling, that is: (1) Not authorized by the Kansas lottery, (2) not linked to a lottery central computer system, (3) available to the public for play or (4) capable of simulating a game played on an electronic gaming

machine or any similar gambling game authorized pursuant to the Kansas expanded lottery act."

The syntax of K.S.A. 2010 Supp. 74-8702(g) implies the word "or" between each of the four subcategories. See, *e.g.*, *State v. Bonner*, 290 Kan. 290, Syl. ¶ 4, 227 P.3d 1 (2010); *State v. Johnson*, 289 Kan. 870, 879, 218 P.3d 46 (2009); *State v. Wiegand*, 275 Kan. 841, 845-46, 69 P.3d 627 (2003) (disjunctive "or" means that any listed alternative suffices to meet statutory conditions).

In order to constitute a gray machine, the device must therefore be mechanical, electro-mechanical, or electronic *and* capable of being used for gambling. It must also (1) not be authorized by the Kansas Lottery *or* (2) not be linked to a lottery central computer *or* (3) be available to the public for play *or* (4) be capable of simulating an authorized gambling game.

Although they are broad in scope, the statutory guidelines are susceptible to precise application to various devices. It is possible to examine any device, a home computer for example, and determine whether it fits the statutory definition. A home computer is a gray machine because it is electronic, it is capable of being used for gambling, and it is capable of simulating an authorized gambling game. In addition, it is not authorized by the Kansas Lottery, it is not linked to a lottery central computer, and it may be available to the public for play. The statute is not unconstitutionally vague.

We note as an aside that it is puzzling why the Kansas Racing and Gaming Commission would feel compelled to work with law enforcement officials "to determine which machines are illegal." Unless the statute is vague, it should be clear to businesses and individuals of common intelligence which devices violate the law. Perhaps the Commission seeks to determine which machines are illegal because, under the statutory definition, few or no devices, tools, or machines are legal, a topic that we now subject to overbreadth analysis.

" 'While a vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected. Almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target,

and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications.' [*State v.*] *Whitesell*, 270 Kan. 259, Syl. ¶ 6[, 13 P.3d 887 (2000)]." *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005).

Prior to enactment of the Expanded Lottery Act statutory scheme, it was the actual use to which a device was put that determined whether it was illegal.

"Our prior decisions have included within the scope of this definition [of gambling devices] a variety of machines and equipment. We have, however, consistently recognized a distinction between property which is illegal per se and therefore contraband, and property which is capable of innocent use but which may become contraband in a particular case because of the illegal use made of the property." *State v. Durst*, 235 Kan. 62, 64, 678 P.2d 1126 (1984).

Pinball machines provide an example of the kind of equipment that the law formerly differentiated based on use. When success in playing pinball is rewarded with additional free games, the machines are not considered gambling devices under K.S.A. 21-4302(d), because the additional games are not considered something of "material value." *State v. One Bally Coney Island No. 21011 Gaming Table*, 174 Kan. 757, 760, 258 P.2d 225 (1953). If, on the other hand, cash payoffs are made for the free games won by playing on the machines, the machines are considered illegal gambling devices. *State v. Thirty-six Pinball Machines*, 222 Kan. 416, 417-22, 565 P.2d 236 (1977); see also *Grigsby v. Mitchum*, 191 Kan. 293, 301, 380 P.2d 363 (1963), *cert. denied* 375 U.S. 966 (1964) (whether pinball machines are gambling devices depends on use and not on how labeled or designed).

Under the Kansas Extended Lottery Act, however, it is not the actual use to which a device is put; any device "*capable of being used* for gambling" is illegal. K.S.A. 2010 Supp. 74-8702(g) (Emphasis added.). Devices that were legal under the definition at K.S.A. 21-4302(d) may now be illegal because they are capable of being used for gambling.

A pinball machine in a bowling alley meets the statutory definition of a gray machine: it is an electro-mechanical device; it is capable of being used for gambling, and it is not authorized by the Kansas Lottery, it is not linked to a lottery central computer system, and it is available to the public for play. Any one of the latter three

factors brings it within the purview of K.S.A. 2010 Supp. 74-8702(g).

The statutes that the plaintiffs challenge make it unlawful for retailers to have on their premises or for individuals to own or operate mechanical, electro-mechanical, or electronic machines that can be used for gambling purposes. Computers with Internet connections are electronic devices that can be used for on-line gambling. Computers without Internet connections are electronic devices that can be used to play games on which bets can be placed. The computer on which this opinion was drafted is a gray machine because it is electronic, it is capable of being used for gambling, and it is not linked to a lottery central computer system. Telephones can be used for making or placing bets. Radios and televisions are electronic devices that can be used to listen to and watch sporting events with consequent gambling applications. Automobiles can be raced and used in other ways that may be subject to gambling. Both Chutes and Ladders and Twister children's games use spinners, which are mechanical devices and which can, of course, be used for gambling. The statutes make it a criminal act to have any of those devices in a place for public use, and they authorize the executive director to confiscate any of those devices even if they are hidden away in the basement closet of a citizen's home.

In its brief to this court, the State explains that a device that is capable of being used for gambling is "a device that is capable of being used to make a bet." It is not only computers, televisions, radios, and telephones that can be used for making bets. By its definition, the word "mechanical" applies to the operation of machines or tools or relates to manual operations. Webster's Ninth New Collegiate Dictionary 737 (1991). So-called "bar bets" can use virtually any tool or device, including doors, bottle openers, and cigarette lighters. The definition that the State proposes is remarkably expansive, including virtually all objects used in day-to-day living. The effect of the statute is to ban practically every tool and mechanical device.

The State argues that the plaintiffs assert no constitutional right that is threatened and that making it illegal to provide the public

with access to virtually any tool or device is within the State's constitutional authority. This is counterintuitive.

An overbroad criminal statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. *State v. Bailey*, 251 Kan. 156, Syl. ¶ 10, 834 P.2d 342 (1992). The United States Constitution is designed to maximize individual freedoms within a framework of ordered liberty, and statutory limitations on those freedoms are examined for substantive authority and content. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). The Fifth Amendment to the United States Constitution protects individuals from government action that appropriates their property without due process and without compensation. See, *e.g., State ex rel. Stephan v. Smith*, 242 Kan. 336, 361-70, 747 P.2d 816 (1987) (compelling attorneys to provide uncompensated legal representation is unconstitutional taking of property). In *State v. McAffry*, 263 Kan. 521, 949 P.2d 1137 (1997), this court found a statute unconstitutionally overbroad that prohibited shining an artificial light on animals while in possession of any implement that could kill animals, because it could be read as a prohibition on protecting one's cattle from coyotes. See also *City of Junction City v. Mevis*, 226 Kan. 526, 601 P.2d 1145 (1979) (city ordinance making it a crime for anyone within city limits to carry any firearm overbroad because it made no exception for transportation of firearm from place of purchase or repair or between a place of business and home).

K.S.A. 2010 Supp. 74-8750(d) allows the executive director of the Kansas Lottery to confiscate any device that 74-8702(g) defines as a gray machine. This statute, as it is currently drafted, essentially deprives citizens and businesses in Kansas of their fundamental right to own property.

Other Kansas statutes prohibit the possession or facilitation of using actual gambling devices. K.S.A. 21-4303 makes gambling a class B nonperson misdemeanor. K.S.A. 21-4304 makes commercial gambling a level 8, nonperson felony. K.S.A. 21-4305 makes permitting premises to be used for gambling purposes a class B nonperson misdemeanor. K.S.A. 21-4307 makes possession of a gambling device a class B nonperson misdemeanor, and K.S.A. 21-

4308 makes installing communication facilities for gamblers a level 8, nonperson felony.

It is a peculiarity of the Kansas statutory scheme that maintaining a pinball machine or a computer, devices that *might be used* for gambling, is now a level 9, nonperson felony, while possessing a slot machine that *is actually used* for gambling is a class B nonperson misdemeanor. This suggests that no rational basis exists for the sweeping definition of gray machines that the legislature has adopted.

We recognize that the overbreadth doctrine "should be employed sparingly and only as a last resort." *Martens*, 279 Kan. at 253. We nevertheless find that a law that makes it unlawful to possess almost any kind of tool or machine and that allows the State to confiscate almost any personal property, regardless of its actual use, is overbroad and unconstitutional. We therefore reverse the district court and hold that K.S.A. 2010 Supp. 74-8702(g), defining gray machines, in combination with its enforcement provisions, K.S.A. 2010 Supp. 74-8750(d) and K.S.A. 2010 Supp. 74-8761, are unconstitutional as they relate to gray machines.

BILES, J., not participating.

R. WAYNE LAMPSON and RICHARD M. SMITH, District Judges, assigned.