(599 P.2d 327)
No. 50,549

STATE OF KANSAS, *Appellee,* v. KENNETH E. GOODMAN, JR., *Appellant.*

Opinion filed September 7, 1979.

*Max Rowinsky* and *Hugh R. McCullough,* of Topeka, for the appellant.

*Ronald E. Wurtz,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, for the appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: The defendant Kenneth E. Goodman, Jr., appeals from his convictions by a jury of one count of unlawful possession of a firearm under K.S.A. 21-4204(1)(*b*) and of one count of falsely reporting a crime under K.S.A. 21-3818. The defendant was sentenced to a term of not less than one nor more than ten years for the unlawful possession of a firearm, and to a

term of one year for falsely reporting a crime, the sentences to run concurrently.

The defendant was tried in the Shawnee County District Court upon an information filed on March 4, 1977, charging him with unlawful possession of a firearm and falsely reporting a crime. A hearing was held on June 27, 1977, in which the court received evidence concerning the defendant's motion to suppress the firearm which formed the basis for the unlawful possession charge. The court orally informed the parties that it was denying the motion to suppress and during the jury trial, from August 29 through August 31, 1977, did admit the firearm into evidence over the defendant's objection.

At trial the State introduced testimony from Topeka Police Officers Klumpp and McCray who were on patrol in the early morning hours of December 26, 1976. While heading south on Fillmore, they observed a northbound vehicle with a loud muffler which accelerated upon seeing the police car. The police officers turned their vehicle around to follow the car, and saw the 1967 green Mercury Cougar fail to stop at a stop sign, turn right, and park illegally. The officers believed the vehicle had been occupied by two persons, but no one was found in the car after it was parked.

The patrolmen then questioned two individuals who were walking away from the vicinity of the parked Mercury Cougar. Both denied any knowledge of or connection with the vehicle. While at this location, the police officers ran a check on the license tag and found no outstanding warrants for it, but discovered that the tag was registered for a Fiat owned by the defendant Goodman.

Using flashlights the officers then examined the inside of the car through the car windows, and Officer Klumpp saw what he believed to be the butt of a revolver sticking out from under the driver's seat. He opened the car door and removed a loaded .38 caliber Llama handgun. After examining the gun and obtaining the serial number, the officers returned the gun to the vehicle.

The officers then established surveillance of the Cougar and at 12:55 a.m. noticed four persons walking towards the car. Upon spotting the patrol car, the individuals walked on past the vehicle. The officers then moved the patrol car out of sight and continued their surveillance of the Cougar. Two of those four persons,

Charles Wiezorek and Ron Brooks, later returned to the vehicle and removed the gun from under the seat. As they walked away from the car, Officers Klumpp and McCray approached them and Brooks dropped the gun on the street. The two were then placed under arrest for violating a city ordinance forbidding possession of a firearm and the gun was seized as evidence.

Charles Wiezorek testified that the defendant came to his apartment during the early hours of December 26 and requested that he or another retrieve a pellet pistol from defendant's car. Wiezorek admitted removing the gun from the car. Other witnesses corroborated Wiezorek's testimony concerning the request of the defendant.

Officers McAndrew and Bachman also testified for the State. They were on duty when the dispatcher McAndrew received a call at 1:12 a.m. on December 26, 1976, from a person who identified himself as defendant stating that his car was missing and he wished to report it stolen. He gave his license tag number, indicating that the tag was registered to his Fiat but was on the Cougar which he was reporting stolen. The caller was advised it would be necessary to complete an official report so that the police could properly investigate the alleged theft. However, the caller refused to go to the Police Department to make a report, and declined the offer of the police to send a car to his address to take his report because he feared that would cause a disturbance near his home. Because Officer Bachman recognized the car reported stolen matched the description of a car he had received on a previous call that night, he relayed the information to the investigating officers.

During the State's case, the court received a stipulation that the defendant had been convicted previously of a felony which formed the basis of the unlawful possession charge. Also, the court admitted the gun found in the defendant's Cougar into evidence over defendant's objection.

Detective Beightel also testified. While investigating the possibility that the witnesses Brooks and Wiezorek had stolen the vehicle and removed the weapon, he interviewed the defendant. Defendant stated that he had been drinking heavily and partying with Brooks and Wiezorek on December 25, and had no recollection of anything until he found himself hitchhiking in central Topeka. When he arrived home he found his car gone and called

police to report it stolen. He further stated that he did not know where the weapon had come from or to whom it belonged.

At the end of the State's case, defendant's motion for judgment of acquittal on both counts was denied.

Thereafter, Robert Wilson testified for defendant, stating that he owned the Llama handgun which had been introduced into evidence. He stated that he had been hunting with his friend the defendant the weekend prior to Christmas, and that the Llama handgun, along with several other guns, had been taken on the hunting trip. He further testified that they had travelled in defendant's Cougar, and that he had inadvertently left the Llama handgun under the seat of defendant's car. He could not recall whether he had told Detective Beightel that he had loaned the gun to Goodman.

Defendant testified in his own behalf relating the events of the hunting trip and claiming Wilson left the handgun in the car after returning to Topeka. Defendant described his repeated attempts to return the gun to Wilson.

Defendant also testified that on the morning of December 26, he was driving the Cougar. When he saw the police officers, he became worried and accelerated the vehicle, fearing that he would not be able to satisfactorily explain the presence of the gun in his car and that he would be returned to prison. Therefore, he abandoned the car and asked his friends to recover the gun. He also admitted calling the police department to report his car missing in the early hours of December 26 in an attempt to cover his tracks.

In rebuttal, the State called Beightel who testified that the witness Wilson had told him during an interview on January 10, 1977, that he had loaned the gun to Goodman about three weeks earlier, but that Wilson said nothing about a hunting trip.

At the close of trial, the defendant renewed his motion for acquittal on both counts, but was overruled. The jury returned a verdict on both counts of guilty.

On October 20, 1977, a hearing on the motion for new trial and on renewal of the motion for acquittal was held, but none of the motions were granted.

On May 2, 1978, defendant was sentenced to a term of indeterminate length of one to ten years for unlawful possession of a firearm and to one year for falsely reporting a crime, the sentences

to run concurrently. On August 21, 1978, the defendant filed his notice of appeal.

Defendant alleges three points of error: (1) that the .38 caliber Llama handgun found under the front seat of defendant's automobile was improperly admitted into evidence; (2) that the evidence did not as a matter of law establish defendant's guilt under K.S.A. 21-4204 of unlawful possession of a firearm; and (3) that Count Two, alleging a violation of K.S.A. 21-3818, falsely reporting a crime, should not have been submitted to a jury because the State's own witnesses indicated the requisite intent was not present.

The defendant questions the legality of the police officers' first removal of the firearm from the unoccupied abandoned vehicle. It should be noted that at the time this alleged offense occurred, there was an ordinance of the City of Topeka which proscribed the carrying of loaded firearms. City of Topeka Criminal Code (1975) § 12-212, states as follows:

"(a) It shall be unlawful for any person who is not an officer of the law, or a deputy to such officer, to be found within the city limits carrying upon his person a concealed deadly weapon. A deadly weapon includes, by illustration, but not limited to: pistols, knives, dirks, sling shots, and knucks; or

"(b) to carry on his person or have within the immediate control of his person on or about public property or a public place within the city limits, any loaded firearm or automatic firearm with the magazine loaded, detached or attached, which when used is likely to cause death or great bodily harm."

It is the defendant's contention that the mere possession of a firearm does not constitute a crime. Therefore, if the police observe a gun in an empty vehicle it cannot be seized without a showing of exigent circumstances, without a necessity for a protective search as authorized by *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968), without being incident to a legal arrest, or unless pursuant to a proper impoundment of a vehicle such as described in *South Dakota v. Opperman,* 428 U.S. 364, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976). The defendant urges that none of these circumstances was present in the initial seizure of the firearm from the defendant's vehicle. Consequently, the replanting of the gun under the seat of the car and the surveillance which led to the actual seizure of the weapons has been tainted by the initial illegal seizure and violated the principles of *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963).

The State counters, however, that the police had observed the vehicle involved in traffic violations and parked illegally. Therefore, they had reason to investigate the vehicle. The State further argues that the gun was in plain view, and once the officers discovered it, they had probable cause to believe that the driver or other occupant had violated the Topeka City Ordinance which proscribes carrying loaded firearms. Therefore, the gun was subject to seizure without a search warrant.

Searches conducted without warrants are per se unreasonable under the Fourth and Fourteenth Amendments of the United States Constitution unless falling within one of the well-delineated exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022, *rehearing denied* 404 U.S. 874 (1971); *State v. Clark,* 218 Kan. 726, 730, 544 P.2d 1372, *cert. denied* 426 U.S. 939 (1976); *State v. Schur,* 217 Kan. 741, Syl. ¶ 1, 538 P.2d 689 (1975). *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925), established one exception for the search of automobiles. Due to their movable nature, the court authorized searches of vehicles by police officers if there is probable cause based upon a reasonable belief arising under the known circumstances that the vehicle contains items entitled to seizure. Vehicle searches therefore must meet the test of reasonableness under the Fourteenth Amendment, *Preston v. United States,* 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881 (1964), but are not dependent upon the right to arrest, *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975, *rehearing denied* 400 U.S. 856 (1970); *Carroll v. United States,* 267 U.S. 132; *State v. Mall,* 216 Kan. 287, 532 P.2d 1048 (1975); *State v. McCollum,* 211 Kan. 631, 507 P.2d 196 (1973).

Under the facts of this case, however, it is arguable that no real "search" occurred, as it has been held that merely looking through the windows of a parked car with a flashlight does not constitute a search if the police are rightfully in the position to have such a view, because observations by the eye of articles in plain view are not condemned by the Fourth Amendment. *State v. Wade,* 206 Kan. 347, 479 P.2d 811 (1971); *State v. McMillin,* 206 Kan. 3, 476 P.2d 612 (1970). See also *State v. Moretz,* 214 Kan. 370, 520 P.2d 1260 (1974), describing other plain view seizures from vehicles. Here the police officers merely shone their flashlights into the car they had been watching because of the

suspicious actions of its driver. However, even "plain view" seizures have been subjected to constitutional scrutiny.

In *Harris v. United States*, 390 U.S. 234, 236, 19 L.Ed.2d 1067, 88 S.Ct. 992 (1968), the Supreme Court observed: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." The plurality in *Coolidge v. New Hampshire*, 403 U.S. 443, advanced a three-prong test to review the legality of warrantless searches and seizures under the "plain view" doctrine, which we adopted in *State v. Jones*, 2 Kan. App. 2d 38, 41, 573 P.2d 1134 (1978). There it was stated:

"[T]hat for the plain view exception to apply, it must be shown (1) that the initial intrusion which afforded the authorities the plain view was lawful; (2) that the discovery of the evidence was inadvertent; and (3) that the incriminating nature of the evidence was immediately apparent."

In *State v. Harrington*, 2 Kan. App. 2d 592, 585 P.2d 618 (1978), the test was applied to uphold a seizure of marijuana that was removed from the sleeping occupant of a seemingly unoccupied car which police had observed parked with its lights on. There the substance was in plain view and exigent circumstances existed. The officers had the right and duty to investigate the situation, plus the marijuana was located in an easily movable vehicle.

In this action the plain view test of *State v. Jones* is met. (1) The officers clearly had the right to investigate the illegally parked car of which they had been suspicious. They did not know whether the vehicle was occupied and could certainly approach it to look for the driver. (2) They inadvertently saw the butt of the firearm through the car windows. The plain view discovery of a gun in a vehicle has been held to constitute probable cause to search and seize it without a warrant. *State v. McMillin*, 206 Kan. at 8. See also *State v. Tygart*, 215 Kan. 409, 524 P.2d 753 (1974); *State v. Robinson*, 203 Kan. 304, 454 P.2d 527 (1969), holding generally that probable cause to search a motor vehicle provides sufficient constitutional justification to search a vehicle and seize evidence without obtaining a search warrant. (3) The presence of the gun was incriminating under the City of Topeka Criminal Code.

Of course, the facts in this case present a slightly different twist because the Cougar was found unoccupied. Also, the police

seized the weapon only long enough to examine it for ammunition, replace it under the driver's seat and set up surveillance of the car. Nevertheless, this was reasonable police activity under the circumstances. They had been following the car because it had been observed committing traffic violations. They knew it had been hastily abandoned and could believe that the owner would return shortly because it was illegally parked. Due to the car's mobility and the probable cause to believe the gun was involved in a city ordinance violation, the officers might easily have concluded that they lacked sufficient time to obtain a search warrant.

The defendant's allegation of error must fail. The seizure meets the required tests of the case authorities discussed above.

The defendant's second contention is that as a matter of law, the State failed to prove by its testimony that he unlawfully possessed a firearm as set forth in K.S.A. 21-4204(1)(*b*):

"(1) Unlawful possession of a firearm is:

. . . .

(*b*) Possession of a firearm with a barrel less than twelve (12) inches long by a person who, within five (5) years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony."

The question upon appellate review is not whether the evidence establishes guilt beyond a reasonable doubt. Rather, it must be determined whether the evidence formed a sufficient basis for a reasonable inference of guilt. *State v. Ames,* 222 Kan. 88, 563 P.2d 1034 (1977). To reach this determination, the evidence must be viewed in the light most favorable to the State. *State v. Ames; State v. Motor,* 220 Kan. 99, 551 P.2d 783 (1976).

In instructing the jury, the trial court stated that before the defendant could be found guilty of unlawful possession, it must be established beyond a reasonable doubt:

"1. That the defendant on or about December 26, 1976, in Shawnee County, Kansas, did willfully and knowingly have or keep a pistol in his possession with the intent to control the use and management thereof, or that the defendant did willfully and knowingly have a pistol in his control with the power and intent to guide or manage such pistol."

Defendant concedes that the State presented substantial evidence that the gun was found in his car and he knew it was there. In essence, however, the defendant contends that there was no evidence that he knowingly and willfully possessed the gun. The

trial court's instruction was properly given, based on *State v. Neal,* 215 Kan. 737, 529 P.2d 114 (1974).

Viewed in the light most favorable to the State, the evidence showed that the gun was seized from a car which bore license tags registered to the defendant. Although there was testimony from the police officers involved that there might have been two or more persons occupying the vehicle before it was abandoned and found by the police, there was corroborated testimony that it was the defendant who appeared at a friend's apartment seeking someone to retrieve the gun from his car. At that time defendant was breathing heavily, and stated that his car was parked just a few blocks away, which would give rise to a reasonable inference that the defendant had just recently driven his car and abandoned it. Shortly thereafter the police found a .38 caliber Llama handgun under the driver's seat. Although conflicting testimony was presented to explain the presence of the gun in the car, there was evidence from which the jury could believe that the gun had been loaned to the defendant.

Based upon the discovery of the gun in the defendant's car, the defendant's own suspicious conduct, and the testimony as to reasons for defendant's possession of the gun, the jury could infer that defendant knowingly and intentionally possessed the firearm. Intent may be established by circumstantial evidence. *State v. Gander,* 220 Kan. 88, 551 P.2d 797 (1976); *State v. Townsend,* 201 Kan. 122, 439 P.2d 70 (1968). The record contains sufficient circumstantial evidence from which the jury could reasonably conclude that the defendant did unlawfully possess a firearm as contemplated by K.S.A. 21-4204(1)(*b*). In a criminal case a guilty verdict will not be disturbed when there is substantial evidence, even though totally circumstantial, from which the jury could draw a reasonable inference of guilt. *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978); *State v. Colbert,* 221 Kan. 203, 557 P.2d 1235 (1976); *State v. Ritson,* 215 Kan. 742, 529 P.2d 90 (1974). Therefore, the defendant's arguments in support of his second issue on appeal are without merit.

Defendant's final contention of error has to do with Count Two, which charged him with violation of K.S.A. 21-3818, falsely reporting a crime. K.S.A. 21-3818 provides:

"Falsely reporting a crime is informing a law enforcement officer that a crime has

been committed, knowing that such information is false and intending that the officer shall act in reliance upon such information.

"Falsely reporting a crime is a Class A misdemeanor."

Following this section is a comment from the Judicial Council stating: "The section is intended to prevent malicious harassment through false accusation."

It is defendant's contention that the State must prove that the false report was made with intent to cause malicious harassment. Such an interpretation flows from the Judicial Council comment appearing after this section.

Defendant presented testimony after his motion for acquittal was overruled. In accordance with *State v. Blue,* 225 Kan. 576, 592 P.2d 897 (1979), when a defendant presents evidence after his or her motion for acquittal at the close of the State's case has been overruled, he or she has waived error in the denial of the motion and all evidence presented should be considered if the motion for acquittal is renewed at the close of all evidence. Therefore, in determining whether the defendant's conviction under K.S.A. 21-3818 should stand, all evidence must be considered.

Basically, defendant claims that the testimony demonstrated that he did not comply with the reporting of crimes procedures of the Topeka Police Department, *i.e.,* defendant failed to appear in person and report that his car was stolen. He further asserts that the report, if deemed made based upon his telephone call, was not for the purpose of harassment.

The jury was apprised during the State's case that Officers McAndrew and Bachman of the communications division of the Topeka Police Department were on duty at 1:12 a.m. when McAndrew received a call from a person identifying himself as defendant. The caller stated his car was missing and he wished to report it stolen. He provided the police with the license tag number and description of the vehicle. When informed that he needed to fill out an official report so that the police could properly investigate, the caller refused to go to the police department to make a written report or to allow an officer to come to his home in order to make a written report. Since the defendant was told that no police action could be taken without filing a missing vehicle report, defendant alleges that he did not possess the required intent for conviction under the statute. However, the police did, in fact, act upon the call when Officer Bachman recognized that the car reported missing matched a description he

had received on a call that night. At no time did the defendant take any affirmative action to retract the report.

In addition, the defendant admitted that he had reported the car missing to cover his tracks, and it is not disputed that the defendant realized what he was doing by calling the police department nor that he knew the report was false. Although there is no Kansas case law construing this statute, viewed from the perspective of the police officers, it would certainly appear that the defendant intended for them to take some action based upon his report, and the jury might reasonably conclude that the defendant's conduct was prohibited by K.S.A. 21-3818.

In determining whether to sustain a motion for judgment of acquittal, the trial judge must decide whether a reasonable mind might fairly conclude that the defendant was guilty beyond a reasonable doubt based upon the evidence presented, and giving consideration to the right of the jury to determine credibility, weigh evidence and draw justifiable inferences. If the judge concludes that a finding of guilt beyond a reasonable doubt is fairly possible, the motion must be denied and the matter submitted to the jury. *State v. Smolin,* 221 Kan. 149, 557 P.2d 1241 (1976); *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973). Based upon the evidence presented, the trial court properly refused to grant the defendant's motion for acquittal of the charge of falsely reporting a crime and properly submitted the charge to the jury.

The judgment of the trial court is affirmed.