NOT DESIGNATED FOR PUBLICATION

No. 113,595

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DALEEN RENEE MILLER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed March 18, 2016. Reversed and remanded.

*Brett Watson*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Ann Sagan*, of Third Judicial District Public Defender Office, for appellee.

Before PIERRON, P.J., BRUNS and GARDNER, JJ.

*Per Curiam*:  The State appeals from an order dismissing its complaint against Daleen Renee Miller for interference with law enforcement by falsely reporting information to law enforcement officers during an investigation. On appeal, we conclude that there was sufficient evidence presented at the preliminary hearing to bind Miller over for trial on the charge of violating K.S.A. 2014 Supp. 21-5904(a)(1)(C). Moreover, applying the plain and unambiguous language of the statute, we do not find that the State is required to establish a "substantial hindrance" in order to prove a violation of K.S.A. 2014 Supp. 21-5904(a)(1)(C). Finally, we do not find the statute to be unconstitutionally

1

vague or overbroad. Thus, we reverse and remand this case to the district court for further proceedings.

FACTS

Around 10 a.m. on November 28, 2014, Officers Matthew Langworthy and Michael Diehl of the Topeka Police Department performed a "hotel interdiction" at a motel in west Topeka. A motel interdiction is a procedure in which law enforcement officers enter the names from a motel's guest list into a database to check for any outstanding warrants. When Officer Langworthy entered the name "Daleen Miller" into the database, he discovered an outstanding felony warrant in the State of Oklahoma and saw that Oklahoma was willing to extradite. Moreover, the database described Miller as a Native American male who was 5 feet, 6 inches tall and weighed 220 pounds.

Officer Langworthy then called his supervisor, Corporal Joshua Klamm, so that he could accompany the officers to Miller's room. When Corporal Klamm arrived, all three officers went to Miller's room on the third floor of the motel. Officer Langworthy later estimated that it took them 45 seconds to reach Miller's room from the lobby. The officers arrived at Miller's door about 1 hour before checkout, which was 11 a.m.

When Officer Langworthy knocked on the door, a Native American woman with wet hair—later identified as Miller—opened the door. After Officer Langworthy identified himself, he told the woman that the officers were looking for a male named "Daleen Miller" who had rented the room. Miller told them that her name was Renee Grant and that she could not speak with them because she was getting ready for work. When the officers asked where Daleen Miller was, she told them that Miller was shopping at Wal-Mart. The officers also asked for a description of Miller, and she responded that Miller was a female who looked like her. The woman then closed the door and locked it.

2

Officer Langworthy again knocked on the door, and Miller once again stated that Miller was not there before closing the door. The officer then knocked a third time and asked Miller to come out of the motel room to speak with Corporal Klamm. In addition, the officers obtained permission to search the motel room. However, the officers did not find anybody else in the room.

Shortly thereafter, the officers returned to the motel office, where they obtained a photocopy of Daleen Miller's tribal identification card, which had Miller's picture. The officers then returned to the room and knocked on the door. Officer Langworthy told Miller that he knew she was lying and asked her to tell him her real name. After she repeatedly maintained that her name was Renee Grant, the officer arrested her.

Approximately 20 minutes elapsed from the time that Officer Langworthy initially spoke with Miller to the time that he placed her in custody. Even after she was placed under arrest, Miller claimed that her name was Renee Grant. Officer Langworthy then transported her to the Shawnee County Jail. It was not until after she was searched by correction officers that she finally admitted that her name was indeed Daleen Miller.

On December 2, 2014, the State charged Miller with one count of interference with law enforcement, false report. Although the complaint cited K.S.A. 2014 Supp. 21-5904(a)(1)(B) for authority, the language mirrored that of K.S.A. 2014 Supp. 21-5904(a)(1)(C). The district court held a preliminary hearing on January 14, 2015.

During the preliminary hearing, Officer Langworthy testified for the State. At the conclusion of his testimony, Miller's attorney argued that the State had presented no evidence to find that she had violated K.S.A. 2014 Supp. 21-5904 (a)(1)(B). In response, the State acknowledged that the charging document erroneously cited subsection (a)(1)(B). Instead, the State requested that the complaint be amended to reflect that Miller violated K.S.A. 2014 Supp. 21-5904(a)(1)(C). Nevertheless, Miller's counsel argued that

3

even if the case were to proceed under K.S.A. 2014 Supp. 21-5904(a)(1)(C), the State could not establish probable cause because it could not prove that Miller's actions substantially hindered Officer Langworthy in the performance of his official duties.

The State argued that K.S.A. 2014 Supp. 21-5904(a)(1)(C) does not legally require a showing of substantial hindrance. Although the district court ultimately bound Miller over for trial, it stated that it would need to conduct further research to determine whether substantial hindrance was an element of K.S.A. 2014 Supp. 21-5904(a)(1)(C). Moreover, at the conclusion of hearing, the district court entered a plea of not guilty on Miller's behalf.

On February 12, 2015, Miller filed a motion to dismiss the complaint, raising the same arguments she made during the preliminary hearing. She also briefly argued without citation that if the court were to find that substantial hindrance was not a requirement, the statute would be unconstitutionally overbroad. The State filed a response, in which it admitted that it had cited the wrong subsection of K.S.A. 2014 Supp. 21-5904(a) even though it quoted the language from the proper subsection. It also argued—as it did during the preliminary hearing—that K.S.A. 2014 Supp. 21-5904(a)(1)(C) did not require a finding of substantial hindrance.

The district court held a hearing on Miller's motion to dismiss on March 20, 2015, during which the parties presented their arguments. Also during the hearing, the State sought leave to amend its complaint to properly cite subsection K.S.A. 2014 Supp. 21-5904(a)(1)(C), which the district court granted. The district court ultimately ruled from the bench that even though K.S.A. 2014 Supp. 21-5904(a)(1)(C) does not explicitly require a finding of substantial hindrance, cases with similar factual backgrounds indicate that such a finding is required. It also found that the State did not provide enough evidence to show that Miller substantially hindered Officer Langworthy, so it dismissed the complaint.

4

On March 23, 2015, the State filed an amended complaint in which it cited K.S.A. 2014 Supp. 21-5904(a)(1)(C) for authority. On April 3, 2015, the State filed a notice of appeal, which became timely when the district court filed a journal entry granting Miller's motion to dismiss on April 9, 2015.

ANALYSIS

To bind a defendant over at a preliminary hearing, the district court must find that the evidence is sufficient to cause a reasonable person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt. On appeal from the granting or denial of a motion to dismiss filed after the preliminary hearing, our review of the district court's probable cause finding is unlimited. *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012).

In reviewing the evidence, we are to draw inferences in favor of the State. Since the evidence need only show probable cause rather than guilt beyond a reasonable doubt, even weak evidence should be sufficient to bind over a defendant for trial as long as it tends to establish that the offense was committed and that the defendant committed it. 293 Kan. at 733-34. In addition, interpretation of a statute is a question of a law over which courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

K.S.A. 2014 Supp. 21-5904(a) provides that interference with law enforcement is:

"(1) *Falsely **reporting** to a law enforcement officer*, law enforcement agency or state investigative agency:
(A) That a particular person has committed a crime, knowing that such information is false and intending that the officer or agency shall act in reliance upon such information;

5

(B) that a law enforcement officer has committed a crime or committed misconduct in the performance of such officer's duties, knowing that such information is false and intending that the officer or agency shall act in reliance upon such information;

(C) *any information, knowing that such information is false and intending to influence, impede or obstruct such officer's or agency's duty*; or

(D) any information concerning the death, disappearance or potential death or disappearance of a child under the age of 13, knowing that such information is false and intending that the officer or agency shall act in reliance upon such information;

"(2) concealing, destroying or materially altering evidence with the intent to prevent or hinder the apprehension or prosecution of any person; or

"(3) knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." (Emphasis added.)

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. See *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). As such, we first must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014). When a statute is plain and unambiguous, we are not to speculate about the legislative intent behind that clear language or read something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014). The rule of lenity—which resolves conflicts in favor of a defendant—arises only when there is any reasonable doubt of the statute's meaning. See *State v. Beaman*, 295 Kan. 853, 868, 286 P.3d 876 (2012).

As set forth above, the plain language of K.S.A. 2014 Supp. 21-5904(a)(1)(C) makes falsely reporting any information to a law enforcement officer to be a crime if the person providing the information knows it to be false and intends to influence, impede, or obstruct the officer's duties. See PIK Crim. 4th 59.020B. The plain language of this subsection does not require that a person make an official report; nor does it require that a

6

person knowingly obstruct, resist, or oppose a law enforcement officer as required by K.S.A. 2014 Supp. 21-5904(a)(3). Rather, to be convicted of this crime, a person must simply provide information to a law enforcement officer (1) knowing the information to be untrue and (2) with the intent to influence, impede, or obstruct the officer's official duties.

Under K.S.A. 21-3818 (version of statute prior to 2011 recodification), "falsely reporting a crime" did not require that a formal report be made. In *State v. Goodman*, 3 Kan. App. 2d 619, 628-29, 599 P.2d 327 (1979), simply calling the police to falsely inform them of a stolen car in an attempt to cover the defendant's tracks was sufficient for the charge to be presented to the jury. Of course, in the present case, it was the police officers who initiated the contact—not Miller.

We note that the word "report" can be both a noun and a verb. Moreover, the word can refer to a number of different things ranging from a formal written account of an event to simple rumors or gossip. We find that the most common definition of the word "report" is "to relate or tell about" something. American Heritage Dictionary 1480 (4th ed. 2000); see *State v. Zeit*, 39 Kan. App. 2d 364, 367, 180 P.3d 1068 (2008) ("We rely upon the American Heritage Dictionary for the common usage of key terms."). As the term is used in K.S.A. 2014 Supp. 21-5904(a)(1)(C), we find that "falsely reporting" means to knowingly tell or provide untruthful information. Furthermore, we conclude that the term "falsely reporting" is broad enough to encompass knowingly providing false information to a law enforcement officer or agency regardless of who initiated the contact.

Here, viewing the evidence in the light most favorable to the State, we believe that sufficient evidence was presented at the preliminary hearing up to establish probable cause that Miller knowingly provided untruthful information to law enforcement officers. Moreover, we find that there was sufficient evidence presented to establish probable

7

cause that Miller provided this false information to the law enforcement officers with the intent to influence, impede, or obstruct them from their official duties. If the evidence is believed, a reasonable person could conclude that instead of remaining silent or giving the officers her real name, Miller voluntarily made the decision to give them a false name in order to divert suspicion from her and to avoid arrest on the outstanding warrant.

Although it is possible—as Miller argues—that the State could have charged Miller with "knowingly obstructing, resisting or opposing any person authorized by law to serve process" under K.S.A. 2014 Supp. 21-5904(a)(3), it was certainly not required to do so. It is unclear, however, whether the police officers were attempting to serve process or simply performing a preliminary investigation. Regardless, we find that there was sufficient evidence presented at the preliminary hearing to support the charge under K.S.A. 2014 Supp. 21-5904(a)(1)(C) of "[f]alsely reporting to a law enforcement officer . . . any information, knowing that such information is false and intending to influence, impede or obstruct such officer's . . . duty" and to bind Miller over for trial.

Next, the State argues that the district court erred by reading a "substantial hindrance" element into K.S.A. 2014 Supp. 21-5904(a)(1)(C). Specifically, the district court found that even though K.S.A. 2014 Supp. 21-5904(a)(1)(C) does not explicitly require a finding of substantial hindrance, caselaw interpreting similar factual scenarios have required such a finding. In particular, the district court relied heavily on *State v. Everest*, 45 Kan. App. 2d 923, 256 P.3d 890 (2011), *rev. denied* 293 Kan. 1109 (2012). In *Everest*, a panel of this court—relying on *State v. Parker*, 236 Kan. 353, 690 P.2d 1353 (1984) and its progeny—interpreted the old version of the obstruction of legal process statute, prior to its 2011 recodification, which made it a crime to "knowingly and intentionally obstruct[], resist[] or oppos[e] any person authorized by law to serve process . . . in the discharge of any official duty." K.S.A. 21-3808(a). See *Everest*, 45 Kan. App. 2d at 928-30.

As previously stated, we must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Phillips*, 299 Kan. at 495. In doing so, we find that the plain language of K.S.A. 2014 Supp. 21-5904(a)(1)(C) does not include a substantial hindrance requirement. Moreover, the pattern instruction for "Interference with law Enforcement—False Reporting," see PIK Crim. 4th 59.020B, also does not list such a requirement. See *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009) (explaining that although the use of PIK instructions is not mandatory, it is strongly recommended).

It is important to recognize that the state of mind required to violate K.S.A. 2014 Supp. 21-5904(a)(1)(C) is significantly different than the state of mind required to violate K.S.A. 2014 Supp. 21-5904(a)(3) or the former K.S.A. 21-3808(a). On the one hand, it is a violation of K.S.A. 2014 Supp. 21-5904(a)(1)(C) to knowingly report false information "intending to influence, impede or obstruct" the duties a law enforcement officer. So, there is no requirement that an actual obstruction be proven—simply the intent to obstruct. On the other hand, one can be convicted for violating K.S.A. 2014 Supp. 21-5904(a)(3) only if he or she knowingly obstructed, resisted, or opposed a person authorized to serve legal process. Hence, an actual obstruction, resistance, or opposition must be proven. Moreover, we note that unlike "Interference with law Enforcement— False Reporting," the pattern instruction for "Interference with Law Enforcement— Obstructing Legal Process" includes "substantial hindrance or increased burden" as one of the required elements. Compare PIK Crim. 4th 59.020B with PIK Crim. 4th 59.040. Thus, we do not find it to be appropriate to read a requirement into K.S.A. 2014 Supp. 21-5904(a)(1)(C) that the legislature did not include.

Nevertheless, Miller argues that if a substantial hindrance element is not read into the statute, K.S.A. 2014 Supp. 21-5904(a)(1)(C) is unconstitutionally vague and overbroad. In considering this argument, we must presume the statute to be constitutional and must resolve all doubts in favor of its validity. In other words, we must interpret the

9

statute in a way that makes it constitutional if there is any reasonable construction that would maintain the legislature's apparent intent. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014). Since Miller is the party attacking the statute, she carries the burden of overcoming that presumption. See *State v. Williams*, 299 Kan. 911, 920, 329 P.3d 400 (2014).

Initially, it is important to recognize that Miller does not claim that the statute restricted her own conduct but that it restricts the First Amendment rights of third parties. Generally, a litigant does not have standing to claim that a statute would be unconstitutional if applied to third parties in hypothetical situations. *Williams*, 299 Kan. at 918. However, a litigant may bring a First Amendment overbreadth challenge on behalf of third parties "'because the mere existence of the statute could cause a person not before the court to refrain from engaging in constitutionally protected speech or expression.'" 299 Kan. at 919 (quoting *City of Wichita v. Wallace*, 246 Kan. 253, 267, 788 P.2d 270 [1990]). Yet, this exception does not extend to unconstitutionally vague claims based on circumstances other than those before the court. 299 Kan. at 919. As such, Miller has standing to bring an overbreadth challenge but not a vagueness challenge.

A statute is overbroad if it prohibits or criminalizes constitutionally protected conduct. *Dissmeyer v. State*, 292 Kan. 37, 43, 249 P.3d 444 (2011). In addition, the overbreadth doctrine "should be employed sparingly and only as a last resort." *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005). As such, in order for Miller to carry her burden to show that the statute is unconstitutionally overbroad, she must prove that (1) a protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications. *Dissmeyer*, 292 Kan. at 40-41.

10

Miller contends that applying K.S.A. 2014 Supp. 21-5904(a)(1)(C) without a substantial hindrance element violates a person's First Amendment right to freedom of speech under the United States Constitution. Specifically, she argues that doing so "would criminalize any false information reported, no matter how inconsequential." However, this is not a fair reading of the statute. First—as previously discussed—the State must prove beyond a reasonable doubt that a defendant (1) knowingly reported untruthful information to a law enforcement officer or agency and (2) did so with the intent to influence, impede, or obstruct a duty such officer or agency. See *State v. Thompson*, 237 Kan. 562, 568, 701 P.2d 694 (1985) (finding that statute concerning harassment by telephone was not overbroad, in part, because the statute required specific intent and willful conduct); *State v. Brown*, No. 104,930, 2011 WL 3558280, at *1-2 (Kan. App. 2011) (unpublished opinion) (finding that falsely reporting a crime is a specific intent crime). Accordingly, one cannot innocently violate the provisions of K.S.A. 2014 Supp. 21-5904(a)(1)(C).

In making her argument, she claims that the United States Supreme Court "has upheld the right to make statements in a number of different contexts which—although the statement may be literally false—are protected speech under the First Amendment." For authority, she relies on the Supreme Court's recent decision in *United States v. Alvarez*, 567 U.S. ___ 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012), in which the Court struck down a federal law making it a crime to falsely claim receipt of military decorations or medals. In reaching this decision, however, the Court was careful to distinguish between the speech covered by the Stolen Valor Act and the speech covered by statutes criminalizing false statements made to government officials, perjury, and false statement that a person is speaking on behalf of the government. 132 S. Ct. at 2545-46. The Court reasoned that prohibiting the latter statements "protect[s] the integrity of Government processes, quite apart from merely restricting false speech." 132 S. Ct. at 2546; see *United States v. Gardner*, 993 F. Supp. 2d 1294, 1307 (D. Or. 2014) (finding that *Alvarez* did not support defendant's contention that her speech which attempted to

11

mislead police officers investigating a federal hate crime was protected). As such, Miller cannot claim that she has a First Amendment right to falsely report information to law enforcement. See *United States v. Chappell*, 691 F.3d 388, 395-98 (4th Cir. 2012) (Virginia statute prohibiting individuals from falsely assuming or pretending to be law enforcement officers was not overbroad).

We must use a common-sense interpretation when determining what conduct a statute potentially could prohibit and "will not give strained meanings to legislative language through a process of imaginative hypothesizing." *State v. Wilson*, 267 Kan. 550, 557, 987 P.2d 1060 (1999). In other words, we must construe statutes to avoid unreasonable or absurd results and presume that the legislature does not intend to enact meaningless legislation. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012). Here, we find that a protected activity is not a significant part of the law's target under K.S.A. 2014 Supp. 21-5904(a)(1)(C). Therefore, we do not find K.S.A. 2014 Supp. 21-5904(a)(1)(C) to be unconstitutionally vague or overbroad.

Reversed and remanded for further proceedings.