IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,077

STATE OF KANSAS,
*Appellee*,

v.

RICHARD I. MOLER II,
*Appellant.*

SYLLABUS BY THE COURT

1.
    If a statute's language is ambiguous, the court may turn to canons of statutory construction, consult legislative history, or consider other background information to establish the statute's meaning.

2.
    When construing statutes, courts presume the Legislature does not intend to enact useless or meaningless legislation.

3.
    The rule of lenity is a canon of statutory construction applied when a criminal statute is ambiguous to construe the uncertain language in the accused's favor.

4.
    The language in K.S.A. 2021 Supp. 22-4907(a)(12) requiring a person subject to it to register "any vehicle owned or operated by the offender, or any vehicle the offender regularly drives, either for personal use or in the course of employment" is ambiguous, so

1

application of traditional canons of statutory construction is necessary to discern its meaning.

5.

In a criminal prosecution, proof the defendant drove an unregistered vehicle of unknown ownership only one time is insufficient to show a violation of K.S.A. 2021 Supp. 22-4907(a)(12)'s mandate to register any vehicle "owned or operated by the offender, or any vehicle the offender regularly drives."

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 30, 2021. Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed November 10, 2022. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: The Kansas Offender Registration Act makes it a crime for a person subject to its provisions to fail to register "any vehicle owned or operated by the offender, or any vehicle the offender regularly drives, either for personal use or in the course of employment." K.S.A. 2021 Supp. 22-4903(a) (criminalizing registered offender's noncompliance with Act's provisions); K.S.A. 2021 Supp. 22-4907(a)(12) (automobile registration requirement). The question here is whether that person can be convicted for not registering another person's vehicle that was driven only once. The State argues the statute covers one-time driving, but that view makes the remaining phrase "or any vehicle

2

the offender regularly drives" pointless, which is disfavored. See *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020) (when construing statutes, courts "presume the legislature does not intend to enact useless or meaningless legislation"). A Court of Appeals panel divided on how to interpret the statute. *State v. Moler*, No. 123,077, 2021 WL 6140376 (Kan. App. 2021) (unpublished opinion). We granted review to resolve the disagreement.

We hold the registration directive in K.S.A. 2021 Supp. 22-4907(a)(12) is ambiguous, so we resort to traditional canons of statutory construction to decide its meaning. And after doing that, it is apparent the State's "one-time driving" interpretation conflicts with the legislative history and the rule of lenity that favors the accused when a criminal statute is ambiguous. We reverse the two convictions at issue because the evidence shows the offender only drove each vehicle one time.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Richard I. Moler II with two counts of violating KORA, K.S.A. 2021 Supp. 22-4901 et seq. At trial, the evidence showed police caught him on two separate occasions driving two different unregistered vehicles.

For the first count, Valley Center police officer Erik Leiker testified he saw Moler on March 13, 2019, driving a Chevrolet pickup. The officer arrested him for driving on a suspended license. Leiker had not seen Moler in the truck before or after this incident. For the second count, Valley Center police officer Erik Nygaard testified he saw Moler on June 22, 2019, driving a Ford Focus. The officer arrested him for driving on a suspended license. Nygaard also said he had not seen Moler driving the Focus before or after this incident.

3

Seth Lenker, a Sedgwick County Sheriff's deputy, testified Moler registered on March 29, 2019, and June 23, 2019, with the offender registration unit. Neither registration contained any vehicle information. He also said Moler did not register the truck or the Focus within three days of either police encounter. Similarly, Lena Castner, another registration unit employee, testified her office's sign-in sheets for March and June 2019 did not show Moler in the office except for March 29 and June 23. She also said Moler's registrations from March 29 and June 23 listed no vehicles.

Moler testified in his own defense. He admitted driving the Chevrolet truck in March and being arrested for driving with a suspended license. He said he went to the registration office twice to report this. He said he was asked if he owned a vehicle or operated one regularly, answering "no" to both. He said he was told he was "fine," signed the paperwork, paid the registration fee, and allowed to leave. He said he registered again in June after being arrested again for driving on a suspended license. As with the prior incident, he told the registration staff he did not own a vehicle or operate one regularly. He said he was told he was "good," completed the paperwork, and allowed to go.

The district court instructed the jury that to convict Moler on each count it had to find:

"1.      The defendant had been convicted of a crime which requires registration pursuant to the Kansas Offender Registration Act;

2.      The defendant failed to provide all vehicle information of a vehicle operated by the offender within 3 business days;

3.      [The date the act occurred;]

4

4.      The defendant was required to register as an offender in Sedgwick County, Kansas."

The jury returned guilty verdicts on both counts. Before sentencing, Moler moved for a judgment of acquittal, arguing:  (1) insufficient evidence supported the convictions; and (2) his registration obligation had expired before the violations occurred. He noted the evidence "suggests only a single use of two different vehicles" and asserted the statute does not impose a "duty to register a vehicle that is not regularly used by the offender." He also claimed ineffective assistance of counsel because his attorney had advised him to stipulate to a registration obligation even though his had expired in 2014.

The district court denied the motion. It ruled the statutory term "operate" did not mean "regularly drive[n]" because the Legislature required registration for vehicles both "operated" and "regularly drive[n]" and listed them in the alternative. The court also rejected Moler's argument that his registration obligation had expired. It sentenced Moler to 57 months' imprisonment on the first registration conviction and to a concurrent 31-month prison term for the second. The court ordered both sentences to run "consecutive to all other cases."

Moler appealed, claiming:  (1) insufficient evidence supported his convictions because KORA does not require registering a vehicle driven only one time; (2) no evidence showed he was "convicted" of a crime requiring registration because he was adjudicated as a juvenile offender; and (3) the district court erred by failing to decide whether he was obligated to register at the time of the offenses, leaving open the possibility his trial counsel was ineffective for recommending the stipulation.

A divided Court of Appeals panel affirmed. *Moler*, 2021 WL 6140376, at *11. On the registration mandate, the majority reasoned:

> "K.S.A. 2018 Supp. 22-4907(a)(12) separates 'any vehicle owned or operated by the offender' and 'any vehicle the offender regularly drives' with the disjunctive 'or.' That 'or' gives the option between a vehicle owned or operated and a vehicle regularly driven, evidence that 'any vehicle the offender regularly drives' means something different than 'operate.' If 'operate' does not mean 'to drive regularly,' then it must mean something else. As discussed, caselaw on K.S.A. 2020 Supp. 8-1567(a) [Kansas' DUI statute] and the dictionary provide us an answer. Relying on the plain meaning of 'operate' in the context of using a car, 'operate' simply means 'to drive' without any requirement as to the number of times." *Moler*, 2021 WL 6140376, at *5.

Judge Thomas Malone disagreed, arguing "[t]he most reasonable interpretation" of the KORA provision at issue "is that an offender must provide information for any vehicle the offender owns or regularly drives." *Moler*, 2021 WL 6140376, at *12 (Malone, J., concurring in part and dissenting in part). He acknowledged his view made the word "'operated' . . . redundant to the term 'owned,'" but thought there would be no reason to include the term "regularly drives" if use of a vehicle only once required registration. He pointed out either reading creates "some redundancy" but thought the majority's view caused an entire clause to have no purpose. *Moler*, 2021 WL 6140376, at *12.

Judge Malone continued by explaining the statute should be read *in pari materia* and harmonized with KORA as much as possible. He noted an offender must register lodging locations only if the offender stays seven days, so it does not make sense to require an offender to report information about a vehicle borrowed once from a friend. He also argued a one-time-use interpretation did not serve KORA's purpose of protecting the public from a likely reoffender by "associate[ing] the vehicle with an offender even

though the offender may never drive it again." *Moler*, 2021 WL 6140376, at *12. Finally, he said he did not consider the statute ambiguous, but even if it is, the rule of lenity would apply to construe the registration mandate in an offender's favor. *Moler*, 2021 WL 6140376, at *12.

As to Moler's second and third arguments, the panel unanimously rejected them. It held the stipulation adequately supported Moler's convictions, and that "[a]ny error in the charging document or in the jury instructions referring to Moler's prior offense as a conviction instead of an adjudication is harmless error because such error did not affect the outcome of the case." *Moler*, 2021 WL 6140376, at *8. It also rejected the ineffective assistance of counsel claim because the State showed it likely had the evidence to prove Moler's registration obligation existed when the driving occurred. *Moler*, 2021 WL 6140376, at *11.

Moler petitioned for our court's review, contending: (1) the evidence did not establish he "owned or operated . . . or regularly drives" the vehicles he failed to register, noting the panel's statutory interpretation split; and (2) the evidence did not establish he was an "offender" required to register. He did not seek review of the panel's ineffective assistance of counsel holding, so that much is settled in the State's favor. See *State v. Neighbors*, 299 Kan. 234, 241, 328 P.3d 1081 (2014); Supreme Court Rule 8.03(i)(1) (2022 Kan. S. Ct. R. at 59).

We granted review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

The State argued to the panel that Moler lacked standing to claim K.S.A. 2021 Supp. 22-4907(a)(12) cannot include single occasion driving because Moler did not prove he only drove each vehicle one time. The panel unanimously rejected this contention, pejoratively characterizing it as "circular and baseless." *Moler*, 2021 WL 6140376, at *3. Among its reasons, the panel noted,

> "Moler meets the basic requirements of standing—he suffered a personal and concrete injury. Moler was convicted of two crimes and sentenced to serve 57 months in prison. That is as cognizable and personal an injury as one can have." 2021 WL 6140376, at *3.

The State did not cross-petition for review of the panel's standing analysis, but since standing implicates our jurisdiction to hear this matter, we mention it briefly to dispose of it. We hold Moler has standing to challenge these convictions on sufficiency grounds based on the statutory interpretation question presented. As the panel correctly observed, "if 'operate' in K.S.A. 2018 Supp. 22-4907(a)(12) does require a vehicle to be driven more than once, the State's assertion that Moler never proved he drove the vehicles only one time each inverts the burden of proof in criminal trials." 2021 WL 6140376, at *3.

INTERPRETATION OF K.S.A. 2021 SUPP. 22-4907(a)(12)

Moving to the merits, we must decide whether sufficient evidence proves Moler "owned or operated . . . or . . . regularly dr[o]ve" the Chevrolet truck and the Ford Focus. The path to deciding this requires interpreting KORA, which presents a question of law over which we exercise unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). When interpreting statutes, a court first attempts

8

"'to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction.' [Citation omitted.]" *Betts*, 316 Kan. at 198.

So starting with the express language, KORA instructs that a "[v]iolation of the Kansas offender registration act is the failure by an offender . . . to comply with any and all provisions of such act, including any and all duties set forth in K.S.A. 22-4905 through 22-4907, and amendments thereto." K.S.A. 2021 Supp. 22-4903(a). Here, the State alleges Moler violated K.S.A. 2021 Supp. 22-4907(a)(12), which provides:

"[A] registration form shall include the following offender information:

. . . .

(12) all vehicle information, including the license plate number, registration number and any other identifier and description of *any vehicle owned or operated by the offender, or any vehicle the offender regularly drives*, either for personal use or in the course of employment, and information concerning the location or locations such vehicle or vehicles are habitually parked or otherwise kept." (Emphasis added.)

Moler does not dispute that driving a vehicle constitutes its operation and concedes the term "operated" can encompass either "regular, ongoing use" or a "one-time use" in a different context. But he claims the term's placement within KORA suggests

9

multiple reasons to construe "operated" to mean regular, ongoing use. He argues: (1) a word is known by its associates, and the terms "owned" and "regularly drives" with which "operated" is associated, each contemplate continuing authority to drive a vehicle; (2) construing "operated" to include one-time driving renders the "regularly drives" clause superfluous; (3) requiring one-time driving registration conflicts with KORA's purpose as shown by provisions like K.S.A. 2021 Supp. 22-4907(a)(6), which requires an offender to register lodging locations where the offender stays for seven or more days, and by KORA's general purpose of protecting the public; and (4) any lack of statutory clarity should be resolved in his favor under the rule of lenity.

The State predictably disagrees. It finds the statute clear and contends the plain meaning of "operated" requires registering even a vehicle used only once. It argues: (1) Moler's interpretation renders "operated" superfluous; (2) registration for one-time use does not make "regularly drives" meaningless because "owned" and "regularly drives" refer to present and ongoing future operation, while "operated" refers to a single use and applies to a vehicle operated in the past; and (3) while owned and regularly driven vehicles will be disclosed at an offender's quarterly registration, a vehicle operated once might not, so one-time vehicle operation triggers a "special instance of offender registration" that might help future police investigations. The State rejects Moler's claim of conflict with KORA's purpose based on the lodging provision, observing that KORA requires registration of all locations a transient offender has stayed since the last report, citing K.S.A. 2021 Supp. 22-4907(a)(6).

With these arguments in mind, we note KORA does not define "operated," so we must resort to the general principle that ordinary words are presumed to carry their ordinary, natural, common meanings. See *State v. Sandoval*, 308 Kan. 960, 963, 425 P.3d 365 (2018). And we acknowledge the word "operated" has a common meaning encompassing driving a vehicle once. See Merriam-Webster's Collegiate Dictionary 869

10

(11th ed. 2020) (defining the transitive verb form of "operate" to mean to "bring about, effect"; "to cause to function, work"; "to put or keep in operation"; or "to perform an operation on"). And we similarly observe there is a less natural, although viable, usage of "operation" in the context of a motor vehicle a person neither owns nor regularly drives that can include "put[ing] or keep[ing]" that vehicle "in operation" by, for example, registering and insuring a vehicle the registrant leases. See Merriam-Webster's Collegiate Dictionary 869 (11th ed. 2020) (defining "operation" to include "the quality or state of being functional or operative").

But in this context, common meaning alone does not supply enough certitude to end this inquiry given the Legislature's confusing descriptor specifying that vehicles "operated" by an offender as well as those "regularly" driven both require registration. K.S.A. 2021 Supp. 22-4907(a)(12)'s sentence structure shows that "owned" and "operated" both reside within a single clause separated by the disjunctive "or." And yet another "or" separates this first "owned or operated" clause from the term "regularly drives." Such a sentence permits a meaning that triggers registration if any of these three conditions (owned, operated, or regularly driven) are satisfied. See *State v. Wiegand*, 275 Kan. 841, 845, 69 P.3d 627 (2003) ("[T]the use of the word 'or' . . . ordinarily means that conditions stand on equal footing and compliance with any condition satisfies the requirement.").

This wording leaves us with a criminal statute specifying conduct encompassed by the term "regularly drives" that is also fully incorporated by the term "operated." And either way, the search for definitive meaning leads to ignoring one or the other terms enacted by the Legislature. See *State v. Brown*, 303 Kan. 995, 1006, 368 P.3d 1101 (2016) (Courts "do not interpret statutes in isolation. Rather, we attempt to harmonize all the parts of an act to the greatest extent possible."). As Judge Malone observed, if the word "operated" means using a vehicle only once, there is no reason to mention an

11

offender also registering a vehicle they "regularly drive[]."*Moler*, 2021 WL 6140376, at *12. After all, a regularly driven vehicle is also operated, and the statute gives no textual clue as to why having both terms serves any substantive purpose.

As written, this statutory provision frustrates the thoughtful judicial search for objective meaning as to the scope of conduct the Legislature seeks to criminalize. Courts "presume the legislature does not intend to enact useless or meaningless legislation." *Smith*, 311 Kan. at 114. And the State's interpretative effort to cast a wider net effectively neuters "regularly drives." By the same token, adopting Judge Malone's view, as he concedes, results in surplus language as well by leaving "operated" without substantive meaning.

Given the options, we conclude the better approach is to simply accept what is obvious and consider K.S.A. 2021 Supp. 22-4907(a)(12) ambiguous, which triggers the need for deeper statutory analysis. See *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018) ("If the language of the statute is unclear or ambiguous," the court may turn "to canons of statutory construction, consult legislative history, or consider other background information to ascertain the statute's meaning."). This in turn leads us to two statutory interpretation tools that are particularly helpful here—the legislative history and the rule of lenity. See *State v. Sandberg*, 290 Kan. 980, 988, 235 P.3d 476 (2010) ("The rule of lenity is a canon of statutory construction commonly applied in the criminal law context."). Neither favors the State's one-time driving viewpoint.

Beginning with the legislative history, KORA nebulously required in 1996 that offenders register their "drivers license and vehicle information." L. 1996, ch. 224, § 5. In 2007, the Legislature changed this to include "the registration number of each license plate assigned to any motor vehicle *normally operated* by the offender." (Emphasis added.) L. 2007, ch. 183, § 5. The statute's current form took shape in 2011, when the

12

Legislature replaced the 2007 language with a directive to provide the number "and any other identifier and description of any vehicle owned or operated by the offender, or any vehicle the offender regularly drives, either for personal use or in the course of employment, and information concerning the location or locations such vehicle or vehicles are habitually parked or otherwise kept." L. 2011, ch. 95, § 7. This, of course, is the problematic language before us.

The 2011 revision accompanied broader changes proposed to bring KORA into substantial compliance with the federal Adam Walsh Act and "resolve several issues, concerns, and loopholes brought to the attention of" the Kansas Bureau of Investigation and an Offender Registration Working Group comprised of representatives from various stakeholders. These proposals were first part of 2011 House Bill 2322 and ultimately enacted in 2011 House Substitute for Senate Bill 37. See L. 2011, ch. 95, § 7. And the testimony supporting the current statutory language explained it required registration only for vehicles the offender regularly drives with no mention of one-time driving. Minutes of House Corrections and Juv. Justice Comm., March 3, 2011, Attachments 5-7 (testimony of Assistant Attorney General Kyle Smith, KBI Special Agent in Charge David Hutchings, and KBI Public Service Administrator Nicole Dekat).

The proponents summarized K.S.A. 22-4907(a)(12)'s changes as follows:

"Amendments to K.S.A. 22-4907:

> 1) Require the signing of the registration form to be witnessed by the registering officer.
>
> 2) Require additional fields to be collected on the registration form such as aliases, all information regarding residences or other locations where the offender is staying, all telephone numbers, license plate

13

number and description *of any vehicle the offender regularly drives and locations where the vehicle is parked, any professional licenses, palm prints, and travel and immigration documents.*" (Emphasis added.) Minutes, House Corrections and Juv. Justice Comm., March 3, 2011, Attachment 7, pp. 7-4 to 7-5 (testimony of Nicole Dekat).

The federal Adam Walsh Act that the 2011 KORA changes were to track, states sex offenders must register "[t]he license plate number and a description of *any vehicle owned or operated by the sex offender*." (Emphasis added.) 34 U.S.C. § 20914(a)(6) (2018). But what does this mean? We are unaware of any federal caselaw applying this provision, although the United States Attorney General published national guidelines for "Sex Offender Registration and Notification." 73 Fed. Reg. 38030 (July 2, 2008); see also 34 U.S.C. § 20912(b) (2018) ("The Attorney General shall issue guidelines and regulations to interpret and implement this subchapter."). The guidelines for 34 U.S.C. § 20914(a)(6) explain:

"Vehicle Information (§ 114(a)(6), (a)(7)): The registry must include '[t]he license plate number and a description of any vehicle owned or operated by the sex offender'. This includes, in addition to vehicles registered to the sex offender, *any vehicle that the sex offender regularly drives, either for personal use or in the course of employment.* A sex offender may not regularly use a particular vehicle or vehicles in the course of employment, but may have access to a large number of vehicles for employment purposes, such as using many vehicles from an employer's fleet in a delivery job. In a case of this type, jurisdictions are not required to obtain information concerning all such vehicles to satisfy SORNA's minimum informational requirements, but jurisdictions are free to require such information if they are so inclined." (Emphasis added.) 73 Fed. Reg. at 38057.

We conclude from this that the proponents of the 2011 changes to KORA, who represented those amendments applied to vehicles an offender who "regularly drives" a

14

vehicle without mentioning one-time driving, understood their proposed changes could satisfy federal law under the attorney general's published guidance as they had explained them. And the statutory language enacted notably parrots both the federal statute and the attorney general's guidance explaining what that language means, strongly suggesting the Legislature did not intend anything different.

The State never mentions this legislative history. It simply argues "a literal construction of KORA is required in order to achieve . . . its legislative purpose," citing *State v. Stoll*, 312 Kan. 726, 480 P.3d 158 (2021). But *Stoll* does not support the State. In that case, the act's literal construction "would achieve, not defeat, its legislative purpose" so there was "no need to liberally construe it" as was argued. 312 Kan. at 731. The *Stoll* court's rationale based its assessment on a particular problem in consideration of the act's purposes and did not establish a general rule demanding "literal" construction as the State contends now.

We must also consider the rule of lenity. Moler correctly asserts that when a criminal statute is ambiguous on a matter, "the rule of lenity applies to mandate that the statute be construed in favor of the accused." *State v. Terrell*, 315 Kan. 68, 73, 504 P.3d 405 (2022). This favors the more lenient construction criminalizing only an offender's failure to register a vehicle owned by the offender, or which the offender normally, habitually, or regularly operates.

Given that both the legislative history and a traditional application of the rule of lenity point in one direction, we hold K.S.A. 2021 Supp. 22-4907(a)(12)'s mandate to register any vehicle "owned or operated by the offender, or any vehicle the offender regularly drives," does not require an offender to register a vehicle of unknown ownership when the offender has driven it only one time. And this means the evidence cannot support Moler's convictions. The State points to nothing in the trial record tending

15

to show Moler used either vehicle other than on the single occasions the testifying officers described. Also absent is any evidence showing who owned either vehicle or to whom they were registered. Any inference Moler drove either vehicle more than once would rest just on speculation.

When the evidence is viewed in the light most favorable to the State, we hold a rational fact-finder could not have found Moler "owned or operated" or "regularly drives" either vehicle under K.S.A. 2021 Supp. 22-4907(a)(12) beyond a reasonable doubt. We reverse the two convictions at issue. And given this result, we need not address his remaining issue on appeal.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.