IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,865

STATE OF KANSAS,
*Appellee,*

v.

JASON S. CUNNINGHAM,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, material and probative evidence is relevant. Material evidence relates to a fact in dispute and has a meaningful impact on deciding the case. Probative evidence has any tendency to prove or disprove a material fact.

2.

A district court may exclude relevant evidence when its probative value is substantially outweighed by its potential to cause undue prejudice. Evidence is unduly prejudicial if it could improperly influence a jury verdict or distract from the case's central issues. An appellate court reviews the district court's undue prejudice ruling for abuse of discretion.

3.

An appellate court reviews claims of prosecutorial error in two steps. It first determines whether the act complained of falls outside a prosecutor's wide latitude to conduct the State's case in any way that does not offend the defendant's right to a fair

1

trial. If it finds error, the appellate court decides whether the error prejudiced the defendant's fair trial right.

4.

In closing arguments, a prosecutor can ask a jury to make determinations based on evidence. A prosecutor errs by asking the jury to rely on something other than the evidence to decide the case.

5.

An appellate court reviews cumulative error claims de novo, assessing whether the totality of the circumstances substantially prejudiced the defendant and denied them a fair trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 8, 2024. Appeal from Ellsworth District Court; CAREY L. HIPP, judge. Oral argument held September 8, 2025. Opinion filed December 5, 2025. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Tyler W. Winslow*, assistant solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.:  A jury convicted Jason Cunningham of eight counts of sexual misconduct with a minor and one count of aggravated intimidation of a victim. He seeks our review after a Court of Appeals panel affirmed his convictions. See *State v. Cunningham*, No. 125,865, 2024 WL 4718465, at *10 (Kan. App. 2024) (unpublished

opinion). Cunningham challenges the admission of web bookmarks with pornographic titles from his phone and computers as propensity evidence, as well as claiming the State's closing arguments vouched for the victim's credibility and presented a "golden rule" argument. He also asserts the cumulative effect of these alleged errors denied him a fair trial. We affirm his convictions, although our reasoning differs from the panel's regarding the "golden rule" error, which we hold was harmless, even when considered together with an error found by the panel involving a photograph of Cunningham's television displaying naked women in an animated video game.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, "Jane" told a friend at school that Cunningham, her mom's then-fiancé, was raping her. Another student overheard this and told a school staff member. A criminal investigation began, which included interviewing Jane, who disclosed Cunningham had been sexually abusing her from the age of four until about two weeks before the interview. Local investigators contacted the Kansas Bureau of Investigation, which led to a warrant for Cunningham's cellphone and computers.

The State charged Cunningham with several sex offenses against Jane and another young girl. Jane testified about several sexual incidents he initiated. She also said he showed her videos of people having sex, including one involving a dad and daughter that was titled something like "Father's Day present." She also described Cunningham showing her a video of her mom having sex with another man.

Cunningham testified in his own defense, claiming his ex-fiancée, Jane's mother, "concocted these allegations to ruin his life and to make sure that he did not get custody of" their child they had together. He believed his ex-fiancée put Jane up to falsely accusing him, and that the other child, he was charged with sexually abusing, joined in.

3

He dismissed two other witnesses' testimony about his previous sexual abuse by arguing they said what they needed to say to help their sister regain custody of the children she had with Cunningham.

The jury found Cunningham guilty of two counts of aggravated criminal sodomy; two counts of promoting obscenity to a minor; and one count each of attempted aggravated sodomy, attempted aggravated indecent liberties with a child, indecent liberties with a child, aggravated indecent liberties with a child, and aggravated intimidation of a witness. The district court imposed a controlling sentence of life imprisonment without the possibility of parole for 50 years, followed by a consecutive 32 months of imprisonment.

Cunningham appealed. The panel affirmed. He petitioned this court for review, which we granted. Our jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

WEB BOOKMARKS WITH PORNOGRAPHIC TITLES

Cunningham challenges the district court's admission of the pornographic titles of his web bookmarks. He argues the panel based its decision on a "misstatement of material fact." Additionally, he believes the panel incorrectly applied this court's holding in *State v. Scheetz*, 318 Kan. 48, 63-68, 541 P.3d 79 (2024). We reject his arguments.

*Misstatement of fact*

Cunningham contends the panel mischaracterized the evidence in a way that tainted its relevance analysis. He points to the panel's explanation about the State's

4

pretrial motion to introduce evidence of prior sexual misconduct, in which the panel stated:

> "Before trial, the State filed a motion to admit evidence of uncharged acts of sexual misconduct discovered during the KBI investigation. In a memorandum in support of that motion, the State explained that it sought to admit the titles of the pornographic videos Cunningham had bookmarked on his cell phone, including: 'Dad Fucks Sleeping Step Daughter 01' and 'Took my step daughters virginity—Raw Confessions.'" *Cunningham*, 2024 WL 4718465, at *2.

In Cunningham's view, these were merely his search terms, not pornographic videos he bookmarked for future access. He claims web bookmarks signify a user intends to return to a particular website for future viewing, so "it cannot be said that the panel's erroneously ascribed ownership did not impact the fact-specific undue prejudice analysis." But we do not see how the panel's decision ascribed an incorrect meaning to the word "bookmark" in conducting its analysis, and he fails to detail where this alleged misnomer affected its analysis. Simply pressing a point without showing why it is sound is akin to failing to brief it, rendering the issue waived or abandoned. *State v. Baker*, 281 Kan. 997, 1015, 135 P.3d 1098 (2006).

A review of the record also shows it is Cunningham, not the panel, who mixes up the facts introduced by Special Agent Anthony Celeste, who testified he used software called Cellebrite to review Cunningham's digital data and "tagged anything that . . . might be of interest." The agent explained tagging the data makes it easier to find later, like "bookmarking a web page." He also said when he was done, he gave the tagged report to Agent Aaron Hachmeister for his own review.

When it was Hachmeister's turn to testify, he described how the Cellebrite report catalogued the extracted data referencing bookmarks:

5

"So the Cellebrite—whenever you create that report,—the reader report, it pulls up a page that has bookmarks—or not—not bookmarks, but tabs, where it has the items that it's collected off that phone. So there could be—it's—basically tells you an extraction summary of what phone it was, when it occurred. And then it provides, like, analyzed data, which would also include cell phone—or phone calls, text messages, web history, web bookmarks, I think music. There's just—it collects everything as raw data from that phone, and then it's placed onto that Cellebrite reader."

The prosecutor clarified this testimony, distinguishing between web history and bookmarks and Cellebrite tags, by asking Hachmeister about each section:

"[PROSECUTOR]:  All right. So I have the report. And it is broken out into different sections?

"[HACHMEISTER]:  Correct.

"[PROSECUTOR]:  Okay. Is one of the sections text messages?

"[HACHMEISTER]:  Yes.

"[PROSECUTOR]:  Is one of the sections phone calls?

"[HACHMEISTER]:  Yes.

"[PROSECUTOR]:  Is one of the sections web history?

"[HACHMEISTER]:  Yes.

"[PROSECUTOR]:  And then you had also mentioned bookmarks?

"[HACHMEISTER]:  Correct.

6

"[PROSECUTOR]:  Is that contained within the web history or is that contained separately?

"[HACHMEISTER]:  That's separate.

"[PROSECUTOR]:  All right. Once you have all of those different categories, what do you do to see if there's any relevant information to your case for each of those sections?

"[HACHMEISTER]:  So what I'll do is I will go through photos, text messages, all those items. And I can do what's called a tag. . . . And so I went through, and I marked some of those items as tags."

The prosecutor then asked Hachmeister if he identified any relevant evidence, specifically focusing on web bookmarks, while reviewing the report.

"[PROSECUTOR]:  [W]ere there web bookmarks identified in the Cellebrite download?

"[HACHMEISTER]:  Yes.

"[PROSECUTOR]:  And did you find bookmarks that you thought were relevant to this case.

"[HACHMEISTER]:  Yes.

. . . .

"[PROSECUTOR]:  Could you describe just the titles; not what you accessed or didn't access, but just the titles for those bookmarks?

7

. . . .

"[HACHMEISTER]:  So I observed a total of 11. No. 1, 'Daddy Teaching Daughter How to Suck and Fuck'; No. 2, 'Daughter Caught Fucking on Hidden Cam'; No. 3, 'Father and Daughter Having Sex'; No. 4, 'Father Fucking His Drunk Stepdaughter'; No. 5, 'Father Raping His Daughter'; No. 6, 'Little Sister Blow Job'; No. 7, 'Rape'; No. 8, 'Real Rape'; No. 9, 'Glory Hole Cream Pie'; No. 10, 'Sister Sucking Brother'; No. 11, 'Virgin Teen Getting Her First Cock.'

"[PROSECUTOR]:  And you said that those were each bookmarks on the cell phone?

"[HACHMEISTER]:  Yes."

Bookmarks came up again when Hachmeister discussed reviewing an item of interest to the investigation marked by Agent Celeste. And the prosecutor's next question clarified that Hachmeister was referencing Cellebrite tags, not a web bookmark. The exchange went like this:

"[PROSECUTOR]:  When you went through the computers, did you do anything to try and see if you could find a video that [depicted Cunningham's former fiancée and another man having sex]?

"[HACHMEISTER]:  So Agent Celeste had—had already done the previews of those items, and he provided me that. And those items were marked by Agent Celeste, or bookmarked form.

"[PROSECUTOR]:  And when you went through the bookmarks that Agent Cleste had made or tags that he had made, did you view each of the things that he had identified?

"[HACHMEISTER]:  Yes."

The agents' trial testimony supports the panel correctly stated Cunningham bookmarked these websites. There is no mistake, let alone a material one, to correct.

*Admission of this evidence*

Turning next to Cunningham's argument that this evidence was inadmissible, he claims the panel incorrectly interpreted *State v. Scheetz*, 318 Kan. 48, 63-68, 541 P.3d 79 (2024), to mean possessing pornography is relevant and admissible *any* time a charged crime includes an element that a defendant acted to arouse or satisfy his sexual desires. He views *Scheetz* as creating an unqualified exception to the general prohibition against using a person's possession of pornography to infer their sexual practices. Cunningham claims this effectively eliminates any inquiry into its materiality or probative value. But that is not what *Scheetz* says.

*Additional facts*

Before trial, the State moved to include the evidence of pornographic titles bookmarked on Cunningham's phone and computers under K.S.A. 2021 Supp. 60-455(d) as relevant to prove his sexual interests. It argued, "This evidence should be admissible to show the Defendant's propensity to commit the offenses with which he is currently charged." Cunningham objected to the titles' relevance and prejudicial effect. The district court sided with the State and allowed the evidence, explaining:

> "[I] think, obviously when I'm looking at the factors to determine the probative versus prejudicial, that I think it is relevant information. I think it is disputed. And I think it is along the same lines of the same pattern and similar sexual activity with young girls. So I think it is relevant information as well. So I will allow the information with respect to the

9

internet searches to come in as well. And obviously with that particular one we do have a much closer proximity in time potentially, too. So I think that's another factor."

During the trial, Agent Hachmeister testified about the bookmarks he identified as relevant to the investigation. He explained:

"So I observed a total of 11. No. 1, 'Daddy Teaching Daughter How to Suck and Fuck'; No. 2, 'Daughter Caught Fucking on Hidden Cam'; No. 3, 'Father and Daughter Having Sex'; No. 4, 'Father Fucking His Drunk Stepdaughter'; No. 5, 'Father Raping His Daughter'; No. 6, 'Little Sister Blow Job'; No. 7, 'Rape'; No. 8, 'Real Rape'; No. 9, 'Glory Hole Cream Pie'; No. 10, 'Sister Sucking Brother'; No. 11, 'Virgin Teen Getting Her First Cock.'"

On appeal, the panel agreed with the district court, holding the pornographic titles were relevant to establish the crime of aggravated indecent liberties with a child and its attempt. *Cunningham*, 2024 WL 4718465, at *6-7.

*Standard of review*

To be relevant, evidence must be material and probative. Appellate courts review the district court's determination of whether evidence is material de novo, and whether evidence is probative for an abuse of discretion. *State v. Alfaro-Valleda*, 314 Kan. 526, 533, 502 P.3d 66 (2022). The abuse of discretion standard also governs whether the evidence's probative value is outweighed by its potential for producing undue prejudice. *Alfaro-Valleda*, 314 Kan. at 535.

*Discussion*

Generally, "all relevant evidence is admissible." K.S.A. 60-407(f); see also K.S.A. 60-401(b) (evidence is relevant when it has "any tendency in reason to prove any material

10

fact"). Relevance has two elements:  a material element and a probative element. *Scheetz*, 318 Kan. at 63. Evidence is material when a disputed "fact has a legitimate and effective bearing on the decision of the case." 318 Kan. at 64. Evidence is probative when it has any tendency to prove or disprove a material fact. *Alfaro-Valleda*, 314 Kan. at 533.

*Scheetz* emphasized relevance is determined by conducting this materiality-and-probative analysis. 318 Kan. at 64. As the panel correctly explained, *Scheetz* held evidence of prior sexual misconduct "*may* be relevant to a person's sexual desires *when those desires are material facts necessary to prove an element of a charged offense*." (Emphases added.) *Cunningham*, 2024 WL 4718465, at *6 (citing *Scheetz*, 318 Kan. at 67). In *Scheetz*, the State charged the defendant with sexual exploitation of a child, so it had to prove the statutory element that he sexually desired children under the age of 18, meaning any evidence supporting that proposition, like searching the terms "Sex at 9 years old" and "Step Dad started blowing me at age 5," was material. 318 Kan. at 64. Scheetz' internet search terms were probative because the fact that he searched for those terms tended to prove he sexually desired underage girls. Rather than crafting any special rules relating to pornographic evidence as Cunningham claims, *Scheetz* directs courts to consider its relevance in the same way as all other evidence—by asking if it is material and probative. 318 Kan. at 64-65.

Whether the panel correctly held the bookmarks evidence was relevant turns on the materiality-and-probativity analysis. As for materiality, it explained:

> "Cunningham's intent to arouse or satisfy his sexual desires was an element of multiple charges against him.
>
> "• Count 6—attempted aggravated indecent liberties with a child under K.S.A. 21-5506(b)(3)(A) (Aggravated indecent liberties with a child is '[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to *with the*

11

*intent to arouse or to satisfy the sexual desires of either the child or the offender*.').
(Emphasis added.)

"• Count 8—aggravated indecent liberties with a child under K.S.A. 21-5506(b)(3)(A) and (c)(3) (Aggravated indecent liberties with a child is '[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to *with the intent to arouse or to satisfy the sexual desires of either the child or the offender*.'). (Emphasis added.)

"• Count 11—lewd and lascivious behavior under K.S.A. 21-5513(a)(2) and (b)(2) (Lewd and lascivious behavior is 'publicly exposing a sex organ or exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, *with intent to arouse or gratify the sexual desires of the offender or another*.'). (Emphasis added.)

"The bookmarks extracted from Cunningham's cell phone were relevant to whether Cunningham committed these charged offenses." 2024 WL 4718465, at *6.

The material-and-probative analysis discussed earlier governs the admissibility of this evidence. Nine of the titles are material because they pertain to Cunningham's sexual desire for incestuous acts or young girls. Seven titles refer to incest—five reference father-daughter themes and another two mention sex between siblings. One of those titles included the phrase "Little Sister," which also indicates his interest in younger girls, along with another bookmark containing the words "Virgin Teen." And while Cunningham's argument that "Glory Hole Cream Pie" has no relation to the underlying charges seems at first blush to have merit, it is undermined by Jane's statement that he showed her a video called "Cream Pie" about "teens having affairs with their dads." Furthermore, the two remaining titles that reference rape are material to show his desire for unlawful sexual acts. See K.S.A. 21-5501(d) ("'Unlawful sexual act' means any rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal

12

sodomy, aggravated criminal sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery, as defined in this code.").

The panel correctly held the bookmark titles were material, despite providing little detail in its reasoning. See *Pieren-Abbott v. Kan. Dept. of Rev.*, 279 Kan. 83, 100, 106 P.3d 492 (2005) ("A lower court's decision will be upheld on appeal even if the lower court relied on the wrong ground or assigned erroneous reasons for its decision."). The panel was also right to conclude these titles were probative. The same reasoning extends to making it more likely (i.e., tending to prove) that Cunningham desired unlawful sexual acts with Jane and another young girl. And the panel correctly rejected his argument that the evidence should be excluded because no evidence shows he accessed the webpages or watched the embedded videos. Whether he did so is an issue of the evidence's value, not its relevance. See *Scheetz*, 318 Kan. at 65. It is sufficient that he "deliberately" bookmarked the websites to admit the bookmarked titles into evidence. See *Scheetz*, 318 Kan. at 65.

Even so, a district court could have excluded the evidence if "its probative value is substantially outweighed by the risk" it causes undue prejudice. K.S.A. 60-445. Of course, evidence that is probative of a defendant committing a crime is inherently prejudicial to the defendant's claim of innocence. *State v. Brown*, 321 Kan. 1, 24, 573 P.3d 237 (2025). But such evidence is only unduly prejudicial if it could improperly influence a jury verdict or distract from the case's central issues. *State v. Perez*, 306 Kan. 655, Syl. ¶ 8, 396 P.3d 78 (2017). And recall that this inquiry is reviewed for abuse of discretion, so the essential question here is whether a reasonable person could reach the district court's conclusion. *State v. Miles*, 300 Kan. 1065, 1066, 337 P.3d 1291 (2014).

Cunningham argues he was unduly prejudiced because the titles "would inspire an intensely negative reaction from any reasonable juror." But this again misses the point.

13

The question is not whether the jury might find the evidence "vile," but whether the jury would reach its result *because of* its vile nature. See *Brown*, 321 Kan. at 24. And as the panel correctly noted, "though the content of those titles was offensive, so were the charges facing Cunningham." *Cunningham*, 2024 WL 4718465, at *7.

We rejected a very similar argument that a pornographic magazine title suggesting the subjects were minors engaging in incestuous acts would greatly prejudice the jury against the defendant in *State v. Horn*, 278 Kan. 24, 38-39, 91 P.3d 517 (2004). And the *Horn* court did so even though the evidence was probative only of the defendant's motive, not an element of the crime. 278 Kan. at 37; see also K.S.A. 2024 Supp. 60-455(b) (motive is one of the material facts enumerated by the statute). But in Cunningham's case, his bookmarks go beyond motive and directly to the core element of the charged crimes—his sexual desire for Jane and another young girl—meaning probative value is exceptionally strong. We hold the evidence's danger of unfair prejudice does not substantially outweigh its probative worth.

The panel correctly held the bookmark titles were relevant. The district court did not abuse its discretion in admitting this evidence.

PROSECUTORIAL ERROR

Cunningham asserts two prosecutorial error issues. First, he believes the panel incorrectly analyzed whether the prosecutor vouched for the victim's credibility by using the pre-*Sherman* ill-will analysis. See *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016) (distinguishing between prosecutorial error and prosecutorial misconduct and overruling the particularized harmless error analysis established in *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 [2004]). Second, he argues the panel wrongly concluded the prosecutor merely appealed to "the jurors' common sense to consider whether [the State's

14

version] was believable" and did not ask the jurors to put themselves in the place of the accused. See *Cunningham*, 2024 WL 4718465, at *10.

His arguments center on two statements the prosecutor made while explaining how the evidence supported the aggravated criminal sodomy charge:

"As far as the charges, these are the charges where the State believes the evidence fits. In Count 1, the defendant is charged with aggravated criminal sodomy. The State believes this is shown to you what's been described or referred to as the chocolate popsicle incident throughout a lot of the testimony.

"In that the State has to prove that the defendant engaged in sodomy with B.B., date of birth 2010; that she was less than 14 years old. And you know that because she's currently less than 14 years old. *So if the event happened, which the State believes that it did* and we believe that the evidence supports, you know that she had to have been less than 14. . . .

. . . .

"We found out yesterday from the defendant that he was accused of doing that before. *How many of you have been accused of something inappropriate involving a popsicle that he says happened when she was four or five?* That corroborates what [the witness] has described, that there was an incident with a popsicle." (Emphases added.)

*Standard of review*

An appellate court reviews prosecutorial error claims in two steps. It "first determines whether the act complained of falls outside a prosecutor's wide latitude to conduct the State's case in any way that does not offend the defendant's right to a fair trial. If it finds error, the appellate court decides whether the error prejudiced the defendant's fair trial right." *State v. Wash*, 320 Kan. 646, 659, 571 P.3d 568 (2025).

15

*Witness credibility (or improper personal opinion)*

Cunningham contends the prosecutor improperly bolstered the victim's credibility by stating "the State believes" "the event happened." He theorizes the panel incorrectly concluded otherwise by considering the prosecutor's intent under outdated law when it excused the complained-of remark as "unnecessary filler language." *Cunningham*, 2024 WL 4718465, at *9. He notes a defendant's right to a fair trial can be infringed even when that was not the prosecutor's intent.

To be sure, the *Sherman* court announced a prosecutor's intent does not hold a place in the second step of a reviewing court's prosecutorial error analysis. 305 Kan. at 107. But *Sherman* disapproved only of cases that considered a prosecutor's intent and did not abrogate all prior caselaw, which is why Cunningham cannot simply reference older cases to support his point. Here, the panel did not violate *Sherman* by citing *State v. Peppers*, 294 Kan. 377, 400, 276 P.3d 148 (2012), and *State v. Mann*, 274 Kan. 670, 688-89, 56 P.3d 212 (2002), for the proposition that a prosecutor may argue evidence shows a defendant's guilt, as long as the statement is directional to that evidence. See *Cunningham*, 2024 WL 4718465, at *10. Those cases can remain good law for purposes not contrary to *Sherman*'s overruling a focus on a prosecutor's intent in the second step.

In fact, those pre-*Sherman* cases help clarify how we should contextualize the prosecutor's comment at Cunningham's trial. The *Mann* court held the prosecutor did not err by stating—"'The [S]tate believes that [the victim] was killed with premeditation intentionally, first degree, and this is why'"—to begin his discussion of relevant evidence. *Mann*, 274 Kan. at 688. On the other hand, the *Peppers* court held a prosecutorial remark that the jury needed to tell the defendant—"'you are guilty of murder . . . because he

16

is'"—lacked direction and improperly expressed personal opinion. *Peppers*, 294 Kan. at 386.

Here, the prosecutor's comment—"So if the event happened, which the State believes that it did"—is more like *Mann* than *Peppers*. By explaining how to interpret the evidence establishing Jane's age at the time, the prosecutor alleged Cunningham committed aggravated criminal sodomy and directed her comment toward whether the underlying event occurred. Finally, this comment does not rely on Jane's credibility at all. The prosecutor did not mention her testimony, let alone venture into the prohibited realm of stating she was truthful. See, e.g., *Wash*, 320 Kan. at 665-66 (determining the prosecutor improperly attacked the witness' credibility by stating the defendant "'can look you in the eye and not tell you the truth'").

We hold the prosecutor did not err.

*Golden rule violation*

Cunningham argues the prosecutor improperly asked the jury to consider facts outside the evidence by stating, "How many of you have been accused of something inappropriate involving a popsicle that he says happened when she was four or five?" He characterizes this as a "golden rule" argument that urges a jury to place itself in the shoes of the accused. The question referred to Jane's testimony that Cunningham put chocolate syrup on his penis so she could pretend it was a popsicle. The panel held the prosecutor did not err, reasoning she merely appealed to the jurors' common sense in assessing whether the story was believable, but we disagree with the panel.

At closing, a prosecutor can only ask the jury to make determinations based on evidence. And regardless of whether the prosecutor's question is labeled a "golden rule"

type argument, it asked the jury to consider something outside the trial evidence. The prosecutor invited the jurors to place themselves in Cunningham's position and speculate on the frequency of true or false accusations of sexual misconduct, even though no such evidence was presented. We hold prosecutorial error occurred.

*Harmless error*

We next consider whether this error denied Cunningham his constitutional right to a fair trial. The State bears the burden to show no reasonable possibility exists that the error contributed to the jury's verdict. *State v. Coleman*, 318 Kan. 296, 307, 543 P.3d 61 (2024).

In advancing a harmless error outcome, the State points us to the analogous case, *State v. Lowery*, 308 Kan. 1183, 427 P.3d 865 (2018). The *Lowery* court identified three prosecutorial errors:  the prosecutor mentioned excluded evidence, misstated the evidence, and made a golden rule argument. 308 Kan. at 1205-06, 1208-11. But it held they were harmless. It reasoned the State presented a strong case and noted the trial court instructed the jury that counsels' statements were not evidence and to disregard any statements, arguments, or remarks not supported by the evidence. 308 Kan. at 1211-12.

Likewise, the State presented significant evidence of Cunningham's guilt, and the jury received comparable instructions about the statements of counsel. During her interview with investigators and again at trial, Jane consistently described the popsicle incident. And the bookmarked titles were particularly pertinent to the charged crimes. The State also presented evidence from two other witnesses that Cunningham sexually abused them as children in a similar manner. Both testified he began sexually abusing them when they were 11 or 12 while he was living with them. Jane's friend also testified that during a sleepover at Jane's house, she awoke to Cunningham touching her breasts

18

and vagina. Taken together, the consistent testimony of multiple witnesses and his own bookmarked titles demonstrate a pattern of sexual misconduct, supporting the criminal charges against him and making the State's circumstantial case highly believable to the jury.

Moreover, the identified error was not a significant part of the State's case; it was made only in passing. See *State v. Gardner,* 264 Kan. 95, 106, 955 P.2d 1199 (1998) (concluding improper closing remark regarding the location of key evidence was harmless because it was made in passing and not an important piece of the State's case). We hold this error is harmless.

CUMULATIVE ERROR

The panel did not conduct a cumulative error analysis because it found a single harmless error—erroneously admitting a photograph of Cunningham's television displaying naked women in an animated video game on his Xbox. *Cunningham*, 2024 WL 4718465, at *7; see also *State v. Mendez*, 319 Kan. 718, 742, 559 P.3d 792 (2024) (cumulative error doctrine inapplicable if only one error is identified). Neither party sought review of the panel's decision on this evidence, so that much is settled. See *State v. Moler*, 316 Kan. 565, 569, 519 P.3d 794 (2022) (not disturbing Court of Appeals decision when it has not been sought for Supreme Court's review). But this photo evidence must still be considered in a cumulative error analysis because we identified an additional error—asking the jury to speculate about the frequency of false accusations.

*Standard of review*

Appellate courts review cumulative error claims de novo to determine whether, under the totality of the circumstances, the defendant was substantially prejudiced and

denied a fair trial. *State v. Mendez*, 319 Kan. 718, 741, 559 P.3d 792 (2024). Here, we apply the constitutional harmlessness test because the prosecutorial error is subject to that standard. See 319 Kan. at 741 ("[i]f any of the errors being aggregated are constitutional in nature, the party benefitting from the error must establish beyond a reasonable doubt that the cumulative effect did not affect the outcome," applying constitutional standard).

*Discussion*

To assess whether there is no reasonable possibility the errors contributed to the trial's result, we consider "the nature and number of errors committed and their interrelationship, if any; and the strength of the evidence." *State v. Owens*, 314 Kan. 210, 241, 496 P.3d 902 (2021). From that perspective, the two errors here are largely weak and unrelated to each other. The State did not argue the photo evidence showed any sexual propensity; the prosecutorial error occurred at closing or was irrelevant to the photograph. Considering the strength of the State's evidence, there is no reasonable possibility these errors' cumulative effect denied Cunningham a fair trial.

We affirm the convictions.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.